OCTOBER AND NOVEMBER TERM, 1881, Nos. 249 AND 250.

# Reck *et al. versus* Clapp.

1. Where, in one of the deeds in the line of defendant's title to real estate, the dates of the deed and the acknowledgment had been erased, mutilated, and changed so as apparently to make the conveyance antedate a judgment which was a lien on the land, defendant is not, as to a sheriff's vendee, under execution upon the judgment, an innocent purchaser without notice, though he paid full consideration, and at the time of the purchase used reasonable diligence, without success, to obtain access to the original papers, and though the title as recorded was fair and free from blemish.

2. A purchaser who examines the records is protected by them as far as they can protect him, but he necessarily takes the risk of having the actual state of the title correspond to that which appears of record.

ERROR to the Court of Common Pleas of *Clarion County.*

Ejectment by W. R. and F. M. Reck against E. E. Clapp to recover the undivided one-fourth of two several tracts of land containing about twelve hundred acres. There were two cases, which, depending upon the same title, were by agreement of the parties tried before the same jury.

Upon the trial in the Court below the following facts appeared:

Both parties claimed through James W. Guthrie, to whom the land was conveyed September 6th, 1872. The plaintiffs obtained a judgment against Guthrie August 6th, 1875, upon which execution was stayed until July 9th, 1878. After the expiration of the stay plaintiffs issued an *alias fi. fa.,* November 6th, 1878, and levied upon the lands in dispute, which were sold by the sheriff to the plaintiff and a

[Reck *et al. v.* Clapp.]

deed executed to him, dated November 23d, 1878, and acknowledged December 5th, 1878.

Defendant offered in evidence an instrument signed and sealed by J. W. Guthrie, dated and acknowledged December 20th, 1874, transferring, selling, and conveying " all my right, title, interest, and claim of, in, and to the deed hereto attached and also to the land described in said deed to Hugh Maguire, his heirs and assigns," which assignment was recorded March 29th, 1877.

He also offered the following papers:

A deed from Hugh Maguire assigning all interest in these lands back to James W. Guthrie, dated and acknowledged February 1st, 1877, and recorded March 29th, 1877.

A deed from James W. Guthrie to defendant for the same lands, dated February 3d, 1877, acknowledged February 5th, 1877, and recorded June 9th, 1877, for the consideration of $2875.

The defendant produced evidence to show that he had paid the whole of the consideration, that before purchasing he had had thorough and careful examination of the records made, and that he had never before seen the deed of December 20th, 1874, Guthrie having told him it could not be found, and having supplied him with an exemplification from the record.

John Beatty, for the plaintiffs, testified in substance:

I am a justice of the peace; an assignment of a deed from J. W. Guthrie to Hugh Maguire was acknowledged before me about February, 1877 ; there was another acknowledgment of an assignment between Guthrie and Maguire before me; the same property was assigned back to Guthrie by Maguire; it was the same year as the first assignment mentioned. Guthrie acknowledged a deed to E. E. Clapp before me.

J. W. Guthrie brought one deed or one of the assignments already mentioned in my testimony before me, and said it ought to have been acknowledged at a certain time, and Guthrie dated the acknowledgment back to the time mentioned. Except these three acknowledgments I had not taken any acknowledgments for J. W. Guthrie for a good many years, and I have no recollection that he has acknowledged any deed or papers before me since these three.

G. W. Arnold, an expert for the plaintiffs, after an examination of the deed of assignment from Guthrie to Maguire, dated December 20th, 1874, testified in substance:

I find the figure 4 in the assignment and in the acknowledgment heavier than the other figures ; there has been something under it; it is either a 5 or an 8. I would say there

was at one time before the figure 4 was placed there that it was 5 in the acknowledgment; I feel very confident it was a 5; in the assignment I am not so confident; I cannot feel determined in my own mind whether it was a 5 or an 8; there has been an erasure there for some cause or other, and the figure 4 is heavier; the paper has been rubbed with something; it is soiled; that at the top might perhaps have been put in the fire; I would say if it was mucilage, as it probably is, it was rubbed with a pretty dirty finger; the coloring at that figure 4 and around it is soiled; the shade of ink in the 4 is different from that in the 187—.

Charles Kaufman, for the plaintiffs, an expert, testified:

There certainly was an erasure in the figure 4 in the assignment, and there was a round figure under it, whether that was a 6, 5 or 8, it is hard to tell; the figure 4 in the acknowledgment stands upon erased paper, but you can't tell what was formerly, if anything, under it; it is heavy; I would not want to swear what was under the figure 4 in the assignment there, but there was a figure under it; I would not want to swear what was under the figure 4 in the assignment, but you can see the outlines of a line or figure, which represents either 5 or 6; it looks more like 6 or 5 than anything else; where the figure 4 is placed in assignment there certainly was an erasure; the paper is certainly thinner there.

Counsel for plaintiffs asked the Court to charge, *inter alia:*

2. "If the jury find from inspection and other evidence that the date of the assignment or transfer by Guthrie to Maguire of his title-deed for the land in controversy, and also the date of the acknowledgment thereof were erased, mutilated and changed on the paper itself, from December 20th, 1875, to December 20th, 1874, it would render such assignment or transfer fraudulent and void; and being in the direct line of his title defendant was bound to take notice of it, and if he failed to do so he is not an innocent purchaser without notice, and the verdict of the jury should be for the plaintiffs for the land in controversy."

The Court answered this point as follows:

"If the date of the assignment was fraudulently changed as stated in this point it would destroy the validity of the paper as affecting all interests intended thereby to be prejudiced, but we do not think that such change would affect the defendant as stated in the last part of said point, if he used due diligence in obtaining correct information, and was unable to do so. The proposition is divisible, the point is double. One part of it declares as a result of the facts hypothetically stated that the assignment would be void. We

[Reck *et al. v.* Clapp.]

. state if this change was fraudulently made it would be void and not prejudice any right or any parties intended to be defrauded. But the other part of the point asserts that this alteration was in the direct line of the title of the defendant, and that he was bound to notice it, and if he failed to do so, he was not an innocent purchaser without notice. To that part of the point we have already said that if he examined all the papers that he had access to or could by reasonable diligence obtain, if he examined the titles on the record and found them fair, and did all that he could reasonably do to find out all about this claim of title, and after having used such diligence was unable to get hold of this paper, the fact that the paper he could not thus get was altered, would not affect him with the consequences stated in the last part of this point."

Plaintiffs excepted to the answer.

August 30th, 1881, verdict for the defendant, upon which judgment was entered.

Plaintiffs then took a writ of error assigning as error, *inter alia*, the answer to the above point.

*W. L. Corbett* and *Boggs & Weidner* for plaintiffs in error.

The main contention in the case is, whether an innocent vendee for value was protected as against a lien-creditor where there was a forgery in one of the links of title under which he claims. The point is predicated on facts which, if found by the jury, would have made the alteration in the assignment a forgery. The assignment had been delivered, and as it appears the alteration in the date was made in 1877. It was a forgery clearly intended to defraud plaintiffs by avoiding the lien of their judgment: 2 Wharton Am. Criminal Law, secs. 1422, 1423, 1427.

A *bona fide* holder for value cannot recover on forged negotiable paper, and should a purchaser of real estate be protected from a forgery in a link in his title under which he claims? 2 Sugden on Vendors, 738; Dovey's Appeal, 10 W. N. C., 389.

To apply the doctrine of *bona fide* purchasers in cases of forgery would be not alone to sweep away secret equities, but legal rights and titles.

*Wilson & Jenks* for defendant in error.

The plaintiffs' second point asks the Court to take the case from the jury on the mere alleged fact that the date of the deed of assignment of Guthrie to Maguire was changed from 1875 to 1874. The answer of the Court was that such a fraudulent change would render the deed void as to the parties intended to be defrauded. But it did not follow that

the verdict of the jury should be for the plaintiffs, as that would depend upon whether Guthrie owned the land at the date of the entry of the plaintiffs' judgment.

The Court turned the case on its real points.

The opinion of the Court was delivered, November 7th, 1881, by GREEN, J.:

The second point of the plaintiffs was in the following words: "If the jury find from inspection and other evidence that the date of the assignment or transfer, by Guthrie to Maguire, of his title-deed for the land in controversy, and also, the date of the acknowledgment thereof were erased, mutilated, and changed on the paper itself, from December 20th, 1875, to December 20th, 1874, it would render such assignment or transfer fraudulent and void, and being in the direct line of his title, defendant was bound to take notice of it, and if he failed to do so, he is not an innocent purchaser without notice, and the verdict of the jury should be for the plaintiffs for the land in controversy."

The hypothetical facts of this point were an absolute obliteration of the actual date of an instrument conveying title to land, and the substitution in place thereof, of an anterior and false date. Beyond all question such an alteration of such an instrument would be a forgery as against any person affected by the damage, and who was not a party or privy to it. The plaintiffs claim to be, and apparently are, such persons. They acquired title by purchase at sheriff's sale under a judgment entered August 6th, 1875. Whatever title Guthrie, the defendant in that judgment, had on that day, in the land in controversy, passed to the plaintiffs by their purchase. This gives them a sufficient interest to question the condition of Guthrie's title. Now, the legal effect of the alleged alteration was to divest Guthrie's title as of August 6th, 1875, by subjecting it to the operation of a transfer dated December 20th, 1874. He held title by a deed in fee simple, dated September 6th, 1872, which on its face contained no conditions or qualifications. But the defendant, Clapp, claims to have been, and apparently is, an innocent purchaser for value of Guthrie's title as it stood on the record. Tested by the record alone his claim would be good because that afforded no evidence of the forgery. In this condition of things the plaintiff's second point was put, in order to charge the defendant with the effect of forgery, for the reason that the forged instrument was itself a link in his chain of title directly through that paper. The question is reduced to one of the plainest and simplest character, to wit, does a forged deed pass the title which it assumes to convey,

[Reck *et al. v.* Clapp.]

as against one who has no participation in or knowledge of the forgery? Of course, it can accomplish no such result.

The second point of the plaintiffs was answered by the Court below by their saying, in effect, that the defendant would not be affected by the forgery, because he could assert the rights of an innocent purchaser without notice if he used reasonable diligence to obtain access to the original papers, but without success, and the title, as recorded, was fair and free from blemish. The consequences of such a doctrine would be of a most serious character if it received the sanction of the courts. For then it would only be necessary for the forger of a deed or mortgage, after having it placed on record, to lose or destroy the original instrument and convey his title to an innocent third person for value, pretending to him that the original paper was mislaid and would be subsequently delivered. Of course, a purchaser who examines the records is protected by them as far as they can protect him, but he necessarily takes the risk of having the actual state of the title correspond to that which appears of record. The language of this Court in the case of Arrison *v.* Harmstead, 2 Barr, 191, fully illustrates this subject. " A deed, good in its creation, may become void by matter *ex post facto*, as by interlineation, erasure, or by alteration in a material part. But a deed may be good in part and void in part. It may be good against one person and void against another." . . . " It is said that Mrs. Lewis is a *bona fide* purchaser without notice, and that the action may be sustained on that ground. But conceding that she is, her situation is no better than the fraudulent grantor's; although the title of the grantor was, in its inception, good, it became entirely void by matter *ex post facto*. At the time of the assignment, the title being avoided, the assignor had nothing to convey; of course, nothing passed to the assignee. It may be, and perhaps is, a hard case. Fraud may be committed on an innocent purchaser, who may find it difficult to guard against imposition. This is conceded; but it is far better to encounter this risk, than to give the least countenance to any alteration whatever of a solemn instrument of writing, which would certainly be the result if the guilty party could escape the consequences of his fraud by a transfer to a person who might assume the garb of an innocent purchaser for a valuable consideration. We cannot lay too many restraints upon trick, artifices, and fraud." In Van Amringe *v.* Morton, 4 Wh., 382, it was held that if a deed which has been executed and acknowledged by the grantor, with a blank for the grantee's name. be surreptitiously and fraudulently taken from the grantor's house and the blank filled up, no title passes thereby;

[Schneider v. The New York and Cleveland Gas Coal Company.]

and a *bona fide* purchaser for a valuable consideration from the person holding the deed stands in no better situation than such fraudulent holder. In the case of Wallace *v.* Harmstad, 8 Wright, on page 494, Woodward, J., speaking of the cases of Arrison *v.* Harmstad, 2 Barr, 191, and Wallace *v.* Harmstead, 3 Har., 462, said, " The stern ruling in those cases was applied without hesitation to a *bona fide* purchaser of the ground-rent without notice of the fraud, so that as far as concerns Arrison and all persons claiming under him the part of the deed which was intended to be to his benefit, may indeed be said to be dead. It was not merely a voidable instrument, it was void. It was called a forgery, and treated as such, and neither law nor equity would tolerate it even in the hands of an innocent purchaser."

We are clearly of opinion that the learned Court below was in error in the answer to the defendant's second point, and for that reason the judgment must be reversed. The views we have expressed require a modification of the answers given to the defendant's third and seventh points, and the case is also reversed on the seventh and ninth assignments, in which those answers are complained of. As to the other matters presented by the various assignments we forbear discussing or deciding them, for the reason that the case goes back for another trial, and these questions may be affected by testimony to be then delivered.

Judgment reversed, and *venire facias de novo* awarded.