# O'Reilly et al. *v.* Reading Trust Company et al., Appellants.

*Guardian—Appointment by Orphans' Court—Guardian ad litem appointed by Court of Common Pleas—Right to execute agreement to compromise litigation.*

1. A guardian appointed by the Orphans' Court for a minor child had authority to execute an agreement to compromise litigation involving the revocation of a trust in which the minor was named as beneficiary, the agreement having been approved by the Orphans' Court, although the Court of Common Pleas had previously appointed another as guardian ad litem for such minor child, it appearing that the guardian ad litem was also the trustee and a party defendant to the litigation, since under such circumstances it was proper that another guardian, representing the minor child alone, should be appointed.

*Equity—Bill to annul trust—Laches—Ratification.*

2. Two daughters, beneficiaries under a trust, signed a compromise agreement at the suggestion of their father which provided for the settlement of litigation instituted to annul an agreement of trust and for the creation of a new trust which had the effect of extending the period during which the property should be held in trust and subsequently after the father's death they entered into an agreement which reformed and ratified the original agreement and thereafter for a period of fifteen years, with full knowledge that the agreement was being carried out according to its provisions, they acquiesced in all that was done: *Held,* that they had no standing in a court of equity to urge that the agreements should be declared void because they did not read either of the agreements and did not know the contents of the agreements until shortly before filing the bill in the court, for the reason (1) that they had been guilty of such laches that they were not in a position to ask for relief, and (2) that when they became sui juris they expressly ratified and confirmed the original agreement creating the trust.

Argued July 17, 1918.   Appeal, No. 330, Jan. T., 1917, by defendants, from decree of C. P. Berks Co., sitting in equity, No. 1176, Equity Docket 1916, for plaintiff in case of Mary E. O'Reilly, Catherine O'Reilly Kelly, Elizabeth O'Reilly Mishler and Joanna M. O'Reilly v. The

Reading Trust Company, Trustee, and John O'Reilly Kelly, by his Guardian ad litem, John Keppelman. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and FOX, JJ. Reversed.

Bill in equity to annul certain trust agreements. Before ENDLICH, P. J.

The opinion of the Supreme Court states the facts.

The court awarded the relief prayed for. Defendants appealed.

*Errors assigned,* among others, were in dismissing exceptions to findings of fact and conclusions of law and the decree of the court.

*Isaac Hiester,* with him *John A. Keppelman,* for appellants.

*E. H. Deysher,* for appellees.

OPINION BY MR. JUSTICE FOX, October 7, 1918:

In 1881 Patrick O'Reilly died leaving a last will and testament, giving his estate to his wife for life with the remainder in equal parts to five children. In 1889 John F. O'Reilly, one of the five children, assigned his interest in the estate to his mother to secure her for advances to him, and directed that the surplus be held by a trustee, in trust to pay the income to him for life and then to his wife, if living, with the remainder to his children. In 1890 the widow of Patrick O'Reilly, in order to effect a settlement of the estate, released her life estate, and the share of John F. O'Reilly thus became subject to the terms of the trust. In 1893 Catherine O'Reilly, the widow, died, leaving a will and creating a trust as to the surplus of John F. O'Reilly's share in accordance with the trust that he had created, and also creating a trust for his share of her estate under the same limitations, except that the interest of the wife of John F. O'Reilly in her estate was to terminate upon the coming of age of young-

est child of John F. O'Reilly. Subsequently the Reading Trust Company was made the trustee for both trusts, and in the estate of Patrick O'Reilly holds the sum of $38,-057.30, and as trustee in the estate of Catherine O'Reilly the sum of $65,270.69.

In 1897 John F. O'Reilly concluded that he had made a mistake in the execution of his trust and executed a revocation in so far as it related to his share in his father's estate. He thereupon filed a bill, in which his wife joined, against the Reading Trust Company as trustee and his three children, to set aside the trust which he had declared. One of these children was a minor, and the Reading Trust Company was appointed her guardian ad litem. A demurrer to the bill was filed by the Reading Trust Company as trustee and guardian ad litem. The other two daughters being of age, and one of them married, though duly served, entered no appearance. Before there was any hearing upon the demurrer filed a compromise of the litigation was effected, and an agreement was executed signed by John F. O'Reilly and his wife, by the two daughters who were of age, and by a guardian appointed by the Orphans' Court of the daughter who was a minor. This guardian executed the agreement after presentation of a petition to the Orphans' Court, setting forth the facts, and the court being of the opinion that it was for the interest of all parties concerned that the compromise agreement should be executed authorized the guardian to assent to the agreement.

This compromise agreement provided that the revocation should be null and void and that a trust should be formed upon the condition that in both trust estates the three daughters should hold their interests only for their respective lives, with remainder to their respective children, and in default of children, as they should respectively by will appoint. On the third day of April, 1901, John F. O'Reilly died. The youngest daughter had attained her majority by that time and the second daughter was married. Under the original trust created by Cath-

erine Cecilia O'Reilly the interest of the mother of these children expired upon the event of the youngest child coming of age and the mother was therefore no longer entitled to the income of the fund. This fact was brought to the attention of the three daughters by an uncle, who suggested that the trust agreement be modified so as to permit their mother to enjoy the income from both trust estates during her life.

Accordingly, on the third day of May, 1901, an agreement was drawn, and executed by the three daughters, Catherine O'Reilly Kelly, Elizabeth O'Reilly Mishler, and Joanna M. O'Reilly, in which, among the recitals, are contained these paragraphs:

"Whereas, it was the understanding and agreement by and between all the parties to the aforesaid agreement (referring to the agreement of December third, 1897) and one of the considerations thereunto moving that not only the payment of the principal mentioned in said last will of Catherine C. O'Reilly should be postponed, but also that the interest accruing on said trust fund should be paid unto Mary E. O'Reilly after the death of the said John F. O'Reilly for and during the term of her natural life, and

"Whereas, notwithstanding the positive and distinct agreement by and between the parties to the agreement that the interest on said trust fund should be paid by the Trustee duly appointed for John F. O'Reilly unto Mary E. O'Reilly for and during the term of her natural life, after the death of the said John F. O'Reilly, it was stated in said agreement in paragraph second as follows: 'but that they will receive from the time when such principal sum would otherwise be payable to them respectively, and in lieu of the principal sums the net interest and proceeds thereof,' and

"Whereas, the said John F. O'Reilly died on the third day of April, A. D. 1891, and

"Whereas, for the purpose of correcting, reforming and making right said agreement in accordance with the

original understanding and intention of the parties to said agreement"......

The agreement then provides that the Reading Trust Company as trustee is to pay over to Mrs. Mary E. O'Reilly during the term of her natural life the net interest and proceeds of said fund. After the execution of this agreement, and in accordance with its terms, the Reading Trust Company from 1901 to 1916 paid over to Mrs. Mary E. O'Reilly the net income from the trust funds. On the tenth day of July, 1916, the widow and children of John F. O'Reilly executed a paper revoking the trust created, and thereupon, on the fourth day of August, 1916, a bill in equity was filed in the Court of Common Pleas of Berks County by the widow and children of the said John F. O'Reilly against the Reading Trust Company as trustee and John O'Reilly Kelly, a minor child of Mrs. Kelly, one of the daughters. This bill prayed that the agreement dated December third, 1897, the original compromise agreement, and the agreement of May third, 1901, which ratified and corrected the original agreement of 1897, both be declared null and void, and that the Reading Trust Company, trustee, should be decreed to hold the trust fund, amounting to $38,057.30, for the benefit of Mary E. O'Reilly for life, and after her death the principal to be paid to the three daughters, and that the Reading Trust Company, trustee, be required to pay over the fund arising out of the individual estate of Catherine O'Reilly to the three daughters, less its reasonable costs and expenditures.

On the hearing of the cause the two daughters who were of age at the time of the execution of the agreement in 1897 testified that they signed this agreement upon the request of their father and without knowing what was contained in the agreement. There is no evidence tending to show that the father exercised any special influence to induce the execution of the agreement by these daughters. The oldest daughter was married and not living at home, and presumably was capable of determin-

ing what was for her best interest. As already pointed out, the agreement was also signed by the guardian of the minor child upon the authority of the court. The testimony taken with reference to what occurred during the lifetime of John F. O'Reilly was under objection by the defendant, the Reading Trust Company, that these daughters were not competent to testify to facts occurring in the lifetime of John F. O'Reilly, under the terms of the Act of 1869 and its supplements. We think that the reasoning of the lower court with reference to this particular question is sound and that the witnesses were competent to so testify, but in the consideration of the larger question which arises in this case the chancellor must bear in mind that these witnesses are so testifying when the mouth of the other party in interest, John F. O'Reilly, is closed forever. The testimony, therefore, should be scrutinized carefully, and should not be given undue weight. The fact also that the agreement of compromise was presented to the court and approved by the court is one that should weigh in the determination of the question now raised. It is suggested by the learned counsel for the appellee that as the agreement of 1897 was executed by a guardian appointed by the Orphans' Court, that he had no authority to execute the agreement because the Court of Common Pleas had already appointed the Reading Trust Company as guardian ad litem in the litigation then pending. We do not assent to this proposition. It was manifestly proper under all the circumstances, as the Reading Trust Company was the trustee and a party defendant to the litigation which was compromised, that another guardian, representing the minor child alone, should be appointed, and that the court should consider the execution of the compromise agreement uninfluenced by the Reading Trust Company.

We have, therefore, an agreement that was entered into in 1897, with no sufficient evidence in the record to establish undue influence, or even domination, by the father to procure the execution of this agreement. There

is the further fact that in 1901, after the death of the father, when the alleged domination could no longer obtain, the appellees entered into an agreement which reformed and ratified the original agreement of 1897 and corrected a mistake which they alleged existed in that agreement.  They not only executed this agreement, but for fifteen years, with full knowledge that the agreement was being carried out according to its terms and provisions, acquiesced in all that was done.  They now come into a court of equity and ask a chancellor to decree that both of these agreements shall be declared null and void.  They allege that they did not read either the agreement of 1897 or the agreement of 1901, and seek to excuse their delay in applying to the court for relief upon the ground that they did not know until shortly before they filed this bill in 1916 what the contents of the agreements were.

We think that the relief prayed for should be denied for two reasons: first, because the complainants have been guilty of such laches that they are not in a position to ask for relief, and second, because in 1901, when they were each sui juris, they expressly ratified and confirmed the original agreement creating the trust.  The familiar equitable maxim, "vigilantibus non dormientibus aequitas subvenit," is peculiarly applicable to this case. No excuse is shown for the failure of the complainants to assert their alleged rights from 1901 to 1916, except the fact that they did not know the contents of the agreements, and they did not know the contents of the agreements, because, they allege, they did not in either instance read the agreements.  This excuse cannot avail. In Pennsylvania Railroad Company v. Shay, 82 Pa. 198, Mr. Justice SHARSWOOD says: "As is said by Chief Justice GIBSON, in Greenfield's Est., 14 Pa. 489, 'If a party, who can read, will not read a deed put before him for execution; or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protec-

tion, either in equity or at law.'" It was the clear duty of the appellees when the agreements were presented to them for signature to have read the papers and acquainted themselves with the contents. In 1897 two of the daughters were of age, and one of them married. It will not suffice to say that they signed the papers because their father requested it, nor does it excuse their dereliction. It is equally true in 1901, when they could no longer allege the domination of the father. The fact that an uncle suggested the modification of the agreement and had the paper prepared does not excuse their failure to read the paper itself. "'A court of equity,' says Lord Camden in Smith v. Clay, 3 Bro. C. C. 640, 'has always refused its aid to stale demands, where the party has slept upon his right, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence; where these are wanting the court is passive and does nothing. Laches and neglect are always discountenanced, and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court'": Tozier v. Brown, 202 Pa. 359; Appeal of the Fidelity Insurance Company, 115 Pa. 157. We are further of the opinion that the execution of the agreement of 1901 by the appellees was an absolute ratification of the earlier agreement of 1897, except that it is conceded by counsel for the appellant that the modification made in the agreement of 1901 is now revocable. In other respects the agreement of trust should stand unimpaired.

The appeal is sustained. The decree of the court is reversed, and the bill of complaint is dismissed at the costs of the appellees.