Warehouse Builders and Supply, Inc. *v.*
Perryman (et al., Appellant).

414

Argued April 16, 1969. Before WRIGHT, P. J., WAT-
KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and
CERCONE, JJ.

*Donald Laird Hankey,* for appellant.

*Allen S. Gordon,* with him *R. H. Buchman,* for ap-
pellees.

OPINION BY CERCONE, J., September 11, 1969:

This is a case in which a father claims that his
signature on a deed of conveyance from him to his
daughter and her husband was forged and that all
encumbrances recorded after the forgery were there-
fore void.

On July 29, 1955, Samuel Hampson, widower, and
his daughter, Albertis, acquired by deed a piece of
property in Westmoreland County. On August 7,

1956, Hampson took the property in his own name by deed from himself, his daughter, Albertis Perryman, and her husband, Alvin E. Perryman. By a third deed dated May 31, 1960, which is the deed Hampson claims to be a forgery, Hampson conveyed the property to his daughter, Albertis, and her husband, the Perrymans.

On November 24, 1961, the Perrymans executed a mortgage on the property and a judgment bond in favor of the Foster Federal Savings and Loan Association. There then followed a series of assignments of the mortgage and bond on January 20, 1964, May 28, 1964, and January 10, 1966, respectively, the final assignee being a Marco Scoratow and his wife, Betty. All of the deeds, mortgage, judgment bond, and assignments were duly recorded shortly after they were executed. On July 29, 1963, a judgment was entered against the Perrymans by the Western Pennsylvania National Bank in the amount of $5,355.00 and on February 14, 1964, the judgment was assigned to the Investors Acceptance Corporation.

On June 24, 1966, Hampson filed a petition to set aside both the mortgage held by the Scoratows and the judgment held by the Investors Acceptance Corporation, claiming his signature on the deed of May 31, 1960, from him to his daughter and her husband was a forgery and that he was the true owner of the premises against which the mortgage and judgments were liened. Upon his petition, rules to show cause were granted.

On July 1, 1966, on further petition of Hampson, execution on a judgment entered by the Scoratows, assignees of the mortgage and judgment bond, against the Perrymans, was stayed pending determination of the petition to have the mortgage set aside.

Deposition of Hampson was taken in Florida and was admitted into evidence before a Master with the

consent of counsel for the judgment creditors. The only other testimony presented before the Master was that of one Fred Broad in behalf of Hampson. The Master concluded in his report that Hampson had failed in sustaining his burden of proof by a preponderance of clear and convincing evidence that the signature of "Samuel Hampson" as grantor in the deed to his daughter and her husband, was a forgery. The Master recommended that the mortgage and two judgments against Perryman stand and that the rules to show cause be discharged.

Hampson filed exceptions to the Master's report, findings of fact, conclusions of law, and recommendation, but the court en banc below dismissed the exceptions and upheld the determination of the Master.

This appeal by Hampson followed.

Our study of the record leads us to agree with the determination of the court below. One who seeks to rebut the presumption of the due execution and acknowledgement of a deed with proof of a forgery must do so by a preponderance of clear and convincing evidence: *Machnofsky v. Smith,* 101 Pa. Superior Ct. 578; *Burke v. Burke,* 240 Pa. 379; *Roberts v. Washington Trust Company,* 313 Pa. 584.

A reading of Hampson's testimony, with its inconsistencies, generalities, and improbabilities, stamps it as insufficient in law to meet the required burden of proof. Nor does the testimony of Hampson's witness, Mr. Broad, give such support to Hampson's claim as to require the court to find in his favor. Hampson presented no corroborating evidence by the persons who could have given testimony regarding the execution of the deed, such as the person signing as witness to his signature and the Notary Public who subscribed as having notarized his signature. He failed to present a handwriting expert in support of the contention that his signature to the deed was forged.

But even if Hampson had been able to sustain his burden of proving forgery, which he failed to do, he still could not have prevailed against the assignees of the mortgage and the judgments. It clearly appears from the record he knew of the forgery as of August 1, 1963, and knew at that time that there were liens of record on that date. Yet, he did not act until June 24, 1966 to correct the record and thus prevent assignments of the liens to assignees who were without knowledge of the claimed forgery. Between those dates he took no steps to invalidate the deed of May 31, 1960, the one he alleged was forged. In the meantime, the assignees had taken their assignments for value and without notice of forgery and thus had become innocent third parties in the transactions. Hampson's delay in this case makes him guilty of laches and estops him from asserting against the assignees whatever right he might have had against the assignors (even though they were innocent of the forgery) if action had been taken immediately upon his alleged knowledge of the forgery. In *Stanko v. Males,* 390 Pa. 281, the court pointed out that when one acts with dispatch, which Hampson did not, he can succeed in setting aside a forged instrument even though the rights of an innocent grantee had intervened. In *Stanko, supra,* the court concluded that the evidence in that case was not sufficient to show that the plaintiff had knowledge of his wife's forgery to a deed and found that he had acted immediately to repudiate the deed when he learned of its existence. He was permitted to have the forged deed set aside even though the innocent grantee had made improvements on the property prior to plaintiff's knowledge of the forgery. The court said: "that the plaintiff had neither executed the deed, authorized his wife to sign it for him, *nor had such notice of the transaction as would estop him from asserting his rights.*"*

---

* emphasis added.

In *Godzieba v. Godzieba*, 393 Pa. 544, the defendant claimed laches in failure of claimant to timely enforce his interest in the real estate, but the court pointed out: "This objection is met at the outset with the fact that it was only when in 1945 the property was transferred to his wife alone that Konstanty's rights were violated. *The record discloses that he acted timely to establish his rights in the property when he learned of the* conveyance."[*]

In *Thees v. Prudential Insurance Company*, 325 Pa. 465, the court determined there was no knowledge on the part of the husband of the wife's forgery to his signature on a deed, and consequently, he could not have been guilty of laches or estoppel, there being no duty under the circumstances for him to make a search of the record to discover an instrument he never executed.

The case now before us is clearly distinguishable. The uncontradicted and clear evidence reveals that Hampson knew of the alleged forgery on August 1, 1963. He so alleged in the complaint filed by him against his daughter on June 24, 1966, in the Common Pleas Court of Allegheny County, which allegation was introduced during the course of his examination on deposition and acknowledged by him during the course of that examination. Hampson could have asserted his defense of forgery against the assignors who secured their interest in the property prior to Hampson's knowledge of the alleged forgery, as a forged deed is a void deed even in the hands of an innocent purchaser: *Reck v. Clapp*, 98 Pa. 581 at 586. However, Hampson's rights against the assignors are no bar against the assignees' assertion of the defenses of laches and estoppel. It is true that an assignee takes a judgment or mortgage subject to any defense

---

[*] emphasis supplied.

the obligor may have against the obligee regarding the assigned instruments, but the assignee does not take the assignment subject to all the defenses a third party may have against the obligee. In this case Hampson was a third party as to the assignees and the assigned instruments and they were not subject to his defense of forgery where he had allowed the assignees to rely on the state of the record at the time they took their assignments.

It is our opinion that the lower court properly disposed of the forgery question in these proceedings since a determination of this matter was not inconsistent with the intent of the Pennsylvania Rule of Civil Procedure No. 3121. No objection was raised to the question of title being determined upon Hampson's petition and rule in the lower court or in this tribunal. Furthermore, the record reveals that Hampson had originally filed an action in equity in the Allegheny County Common Pleas Court to have the deed set aside, and by agreement of counsel for the judgment creditors, that action was discontinued in favor of the procedure taken by Hampson in the Westmoreland Common Pleas Court. The only procedural question raised by the creditors in the instant action was whether or not Hampson could collaterally attack the liens. However, as summarized in 30 Am. Jur. 2d. Executions, §617, page 794: "An execution has been adjudged subject to collateral attack because of its enforcement against property not subject thereto, either because the property did not belong to the judgment debtor or because the property was exempt by law from execution." In *Capozzi v. Antonoplos*, 414 Pa. 565, at 568, the appellant claimed that the court below lacked the power to adjudicate the validity of the purchaser's title (at a Sheriff's sale) upon petition and rule and that relief should have been sought through an action of equity or other appropriate action. The

Supreme Court said: ". . . no objection was entered below by Zaimes on this ground and the action proceeded to hearing and decision with his acquiescence. In fact in the related equity action, in preliminary objections, he alleged that the county court was the proper forum to resolve the issue. The timeliness of the proceeding to set aside was first questioned on this appeal. It is fundamental that questions not raised below will not be heard on appeal: . . . But it is maintained that the issue concerns the jurisdiction of the court and may be raised any time. That it is a jurisdictional question, we do not agree.

"The Rules of Civil Procedure are clearly limited in their scope to practice and procedure in the courts of the first instance. They do not involve jurisdiction. See, Reading Co. v. Willow Dev. Co., Inc., 407 Pa. 469, 181 A. 2d 288 (1962). Moreover the test of jurisdiction is the competency of the court to determine controversies of the general class to which the case presented for consideration belongs . . . The court below certainly had the power of control over its own execution process and to act to prevent an abuse thereof. See: Cake v. Cake, Depew's Appeal, 192 Pa. 550, 43 A. 971 (1899) ; and 15 P.L.E. Execution §95."

The cases of *Simon v. Sorrentino,* 145 Pa. Superior Ct. 364, and *Greater Valley Terminal Corporation v. Goodman,* 415 Pa. 1, concerned the issue of whether or not title to property standing in the name of or in the possession of someone other than the judgment debtor could be adjudicated, at the judgment creditor's request, in the execution proceedings. The *Simon v. Sorrentino* case arose prior to the new Rules of Civil Procedure effective November 1, 1960, and the *Greater Valley Terminal Corporation v. Goodman* case involved Rule 3118, "Supplementary Relief in Aid of Execution," the Court limiting its pronouncement to "title to property cannot be properly adjudicated under the

procedures contemplated by Rule 3118." Rule 3118 is not here involved. This is not a case of the judgment creditor seeking supplementary aid in execution; this is a Petition by a third party to set aside liens placed on property which he claims he owns. Thus, it is the third party claiming ownership who is choosing the procedure whereby he wishes his title tested, and further unlike the two cases cited, the judgment creditor has never, either in the court below or in this court, raised the issue of the impropriety of determination of title under the Petition and Rule. There thus was a waiver on this issue which, as demonstrated in *Capozzi v. Antonoplos, supra,* is not a jurisdictional question.

The parties have acquiesced in the procedure followed and have expressed no complaint in that regard. The parties to the action permitted the matter to proceed before a Master who received the evidence in the case, filed his report containing his Findings of Fact, Discussion, Conclusions of Law and Recommendation. This court, therefore, should not attempt to leave the door open for relitigation of the issues here presented by the parties. The fact that title was adjudicated without a jury trial is not crucial. Even in an action to quiet title no jury trial is available: *White v. Young,* 409 Pa. 562, at 567.

In the light of the foregoing, we affirm the order of the court below and order that the costs of this case be borne by Hampson, the appellant.

---

CONCURRING OPINION BY MONTGOMERY, J.:

Although I concur in the affirmance of the lower court's order, I think that our decision has the limited effect only of allowing execution to proceed.

Pennsylvania Rule of Civil Procedure 3121 (a) (3) provides for a stay of execution pending disposition of a claim by any person against the subject property.

The record does not reveal that Mr. Hampson has any such claim now pending. As stated in the majority opinion, Hampson did at one time have such a claim. He had filed an action in equity in the Allegheny County Common Pleas Court to have the deed set aside, but by agreement of counsel for the judgment creditors, that action was discontinued. Thus, the parties here by mutual consent have attempted to give the court jurisdiction to try the issues by petition and rule. Such procedure is improper. I think it is immaterial that the issue of jurisdiction has not been raised by the parties. It is well established that where the court would otherwise have no jurisdiction of the cause of action or subject matter involved in a particular case, such jurisdiction cannot be conferred by consent, agreement, or other conduct of the parties. 10 P.L.E., Courts, §15.

Admittedly, *Greater Valley Terminal Corporation v. Goodman,* cited by the majority, involved supplementary proceedings in aid of execution under Pa. R. C. P. 3118; but I consider the case analogous to this situation and the language of the Court therein very helpful. Not only did the Court enumerate how the issue of title to property in the hands of third persons sought to be executed against should be ascertained, none of those listed being the proceedings attempted here, but also, on page eight, it stated: ". . . the Bench and the Bar must in all proceedings conform to the well-established procedures laid down by the legislature and this Court. The failure so to do can only lead to confusion in the administration of justice and deprivation of the rights of litigants in this Commonwealth." The reasoning is similar in *Simon v. Sorrentino,* 145 Pa. Superior Ct. 364, 20 A. 2d 805 (1941), also cited by the majority. I think that Judge LIPSITT correctly cited that case in *Hollinger v. Penn Harris Real Estate, Inc.,* 39 Pa. D. & C. 2d 201 (1966), in

which he ruled that there is no authority in law for a litigant to proceed by petition to declare a judgment invalid against a particular piece of property.

Even if the parties had permitted the action in equity to proceed or if there was another claim by Hampson pending by proper procedure, I doubt that execution should be stayed in this case. I think that the practice prior to promulgation of Rule 3121 on stay of execution on realty still prevails, as discussed in 4 Goodrich-Amram §3121(a)-1, as follows: ". . . claims to real estate or to interests in real estate cannot properly be raised as an automatic bar to execution under subsection (a)(3). As to such claims, the general rule is that the judgment creditor may be allowed to proceed to execution sale, with any questions of title or other adverse claims being properly raised and determined only in a later ejectment action brought by the purchaser."

Therefore, I do not join in the reasoning or in the apparent adjudication of the substantive questions in the majority opinion but concur only in the result.