J-S34015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JASON J. O'DONELL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REBECCA C. O'DONELL, HAROLD E. | : | |
| O'DONELL, JR. AND UNITED | : | |
| WHOLESALE MORTGAGE, LLC | : | No. 119 MDA 2025 |
| | : | |
| | : | |
| APPEAL OF: REBECCA C. AND | : | |
| HAROLD E. O'DONELL, JR. | : | |

Appeal from the Judgment Entered February 28, 2025
In the Court of Common Pleas of Juniata County
Civil Division at No:  2022-00191

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY STABILE, J.:                **FILED: FEBRUARY 27, 2026**

Appellants, Rebecca C. and Harold E. O'Donell, appeal from the February 28, 2025, judgment entered in favor of Jason O'Donell.  We affirm.

This appeal arises from a dispute to the title of real estate located at 248 Foltz Lane, Mifflintown, Juniata County (the "Property").  Appellant Rebecca C. Odonell ("Rebecca") is the mother of Appellant Harold E. O'Donell ("Harold Jr.") and Appellee, Jason J. O'Donell ("Jason").  Rebecca acquired the Property, along with her husband, the late Harold O'Donell, Sr. ("Harold Sr."), by deed of April 14, 1997.  At that time, Rebecca and Harold Sr. were struggling financially, and they asked Jason, who was 19 years old at the time, for help in obtaining a mortgage to purchase a mobile home to be installed on

the Property. Rebecca, Harold Sr., and Jason arrived at a verbal agreement whereby Jason would own the Property upon the death of both Harold Sr. and Rebecca. A deed executed June 13, 1997, grants Jason a one-half interest in the Property, with Rebecca and Harold Sr. owning the other half. The two half-interests were held as joint tenancies with the right of survivorship. Subsequently, Jason sought to obtain a mortgage in the amount of $61,500.00 to facilitate the purchase of a mobile home and its installation on the Property. Prior to execution of the mortgage, however, the mortgagee required that Jason become the sole owner of the Property. A deed executed on December 31, 1997, coveys title of the Property to Jason alone. Rebecca and Harold Sr. made most of the mortgage payments, with occasional assistance from their children. The mortgage was marked satisfied on January 27, 2005.

A short time after the financing was secured, Rebecca and Harold Sr. asked Jason to add them as owners of the Property, in accordance with the earlier agreement. Jason claims he agreed to this, with the understanding that he would become the sole owner of the Property upon the death of his parents. A deed executed on June 15, 1998 (the "1998 Deed") gives Jason a one-third interest in the Property as a tenant in common along with Rebecca and Harold Sr. Just under two years later, another deed dated May 25, 2000 (the "2000 Deed") conveys Jason's interest in the Property back to Rebecca and Harold Sr., making them the sole owners of the Property as tenants by

the entireties. Along with the execution of the 2000 Deed, Harold Sr. and Rebecca obtained a $65,000.000 mortgage loan. That loan was marked satisfied on October 25, 2001.

On April 4, 2003, another deed was executed (the "2003 Deed") giving John O'Donell ("John"), brother of Jason and Harold Jr., an interest in the Property.[1] Prior to the execution of the 2003 Deed, Rebecca asked John to cosign a loan against the Property. John agreed to cosign the loan but was unaware that his name was on the 2003 Deed. In 2005, another deed (the "2005 Deed"), conveyed John's interest back to Rebecca and Harold Sr. The 2005 Deed purports to be signed by John and his wife, Jeri O'Donell ("Jeri"), but both John and Jeri testified that they were unaware of the 2005 Deed and never signed it.

The most recent deed on the Property, executed on April 29, 2022 (the "2022 Deed") conveys the property to Appellants, Rebecca and Harold Jr. as joint tenants with a right of survivorship.[2] Rebecca claims she conveyed an interest to Harold Jr. in exchange for his help in obtaining a loan. After the execution of the 2022 Deed, Rebecca and Harold Jr. obtained a $143,000.00 mortgage secured against the Property. The mortgagee was United Wholesale

---

[1] The 2003 Deed also names Ralph and Dorothy O'Donell, the couple who conveyed the Property to Rebecca and Harold Sr. in 1997. The involvement of Ralph and Dorothy O'Donell is not relevant to this action.

[2] Harold Sr. passed away on July 24, 2021, prior to the execution of the 2022 Deed.

Mortgage, LLC ("UWM") a party captioned above. At the outset of trial, the parties stipulated to a settlement and discontinuation of the action against UWM. N.T. Trial, 5/30/24, at 4. Jason claims he became aware of all of the post-2008 conveyances during conversations with his brothers, John and Allen O'Donell, in 2022. Sometime after these conversations, he went to the local courthouse to examine the records.

On October 31, 2021, Jason commenced this action with a complaint. He alleged that Rebecca misrepresented the terms of the 1998 Deed to him before he signed it. He also alleged that the 2000 Deed was executed without his knowledge and with his signature forged. According to the complaint, the closing company that prepared the 2000 Deed is defunct and its principal is in jail. Count I of the complaint alleged a cause of action for breach of contract, arising from the alleged 1997 oral agreement whereby Jason would take the property upon the death of Harold Sr. and Rebecca in exchange for his help in obtaining financing for the mobile home. Count II alleged a promissory estoppel cause of action based on those same facts—in essence, the promise from Harold Sr. and Rebecca induced Jason to risk his credit. Count III alleged fraudulent misrepresentation action based on the 1998 Deed, wherein Rebecca did not give Jason a right of survivorship in accordance with the parties' original agreement. Count IV alleged a cause of action to quiet title in the Property. Count V, for declaratory judgment, seeks a declaration of Jason's rights in the Property.

The matter proceeded to a non-jury trial on May 30 and 31, 2024. On November 1, 2024, the trial court entered an order directing the execution of a deed conveying a one-half interest in the Property to Jason and Rebecca, with a right of survivorship. This echoes the terms of the June 13, 1997, deed, except that it omits Harold Sr., who passed away prior to the commencement of this action. The order was reduced to Judgment, at the direction of this Court, on February 28, 2025. We now turn to the Appellants' arguments.

Appellants present nine questions, which we will not reproduce verbatim. Appellants' questions do not correspond to the body of their brief, which his divided into fourteen sections. The structure of Appellants' brief is not in accord with Pa.R.A.P. 2119(a) which requires the argument to be divided into as many parts as there questions presented. Likewise, Appellants make several arguments that were not included in their questions presented, in violation of Pa.R.A.P. 2116(a). We will proceed through the fourteen sections of Appellants' brief, addressing Appellants' arguments to the best of our ability.

When reviewing an equitable decision, such as a judgment quieting title in real estate, our standard of review is deferential:

> We will reverse only where the trial court was palpably erroneous, misapplied the law, or committed a manifest abuse of discretion. Where there are any apparently reasonable grounds for the trial court's decision, we must affirm it. Moreover, the function of this Court on an appeal from an adjudication in equity is not to substitute our view for that of the lower tribunal; [we are] to determine whether a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the

conclusion of that tribunal ... when reviewing the results of a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence.

***Calisto v. Rodgers***, 271 A.3d 877, 881 (Pa. Super. 2022).

Appellants' first two arguments address the validity of the alleged 1997 oral agreement among Jason, Rebecca, and Harold Sr, as well as the validity of the June 13, 1997 deed that granted Jason a one-half interest in the Property with a right of survivorship. Appellants' Brief at 5-8. Thes arguments are entirely unsupported by citation to authority, as required by Pa.R.A.P. 2119(b). Appellants' Brief at 6-8. As such, Appellants' have waived those arguments. ***Estate of Haiko v. McGinley***, 799 A.2d 155, 161 (Pa. Super. 2002). As we stated in ***McGinley***, "[w]ithout a reasoned discussion of the law against which to adjudge [the appellants'] claims, our ability to provide appellate review is hampered." ***Id.*** This deficiency results in waiver. ***Id.***

In their next argument, Appellants claim that the trial court erred in finding that the 1998 Deed was procured by fraud. Appellants' Brief at 8-9. Here, Appellants argue that the trial court should not have voided the 1998 Deed because Jason admittedly signed it but failed to read it. Appellants quote ***Yohe v. Yohe***, 353 A.2d 417 (Pa. 1976), in which our Supreme Court wrote: "If a party, who can read, will not read a deed put before him for execution … he is guilty of supine negligence, which … is not the subject of protection, either in equity or at law." ***Id.*** at 420 (quoting ***O'Reilly v. Reading Trust Co.***, 105 A. 542, 544 (Pa. 1918)). The plaintiff in ***Yohe*** signed a deed

believing he was getting a new deed after paying off a mortgage. Instead, he conveyed the property to his wife. Significant for our purposes, however, is the passage that preceded the sentence quoted just above:

> The record is clear that the defendant used no subterfuge or fraud to persuade the defendant (sic) to sign the deed and nothing was done to prevent the plaintiff from reading what he signed. No questions were asked by the plaintiff and he was not misled in any way by the defendant or the lawyer's secretary.'

*Id.* The same is not true in the case on appeal. Rather, this case revolves around Rebecca's alleged fraud and subterfuge. Where the signatory to a deed admits that that the signature is genuine, but claims that he was fraudulently induced into signing it, the deed is considered voidable (as opposed to void *ab initio*). **Ford v. Oliver**, 176 A.3d 891, 902 (Pa. Super. 2017). The two paragraphs Appellants devote to this argument do not address the legal significance of the facts of this case, other than a conclusionary statement that the trial court's finding of fraud was against the weight of the evidence. Appellants' Brief at 8-9. Indeed, Appellants never address the law of voidable deeds. As such, Appellants have not articulated any valid basis upon which we can disturb the trial court's finding that the 1998 Deed was procured by fraud and therefore void.

Next, Appellants challenge the trial court's finding that the 2000 Deed was procured by fraud. Appellants' Brief at 9-15. Jason does not admit signing this deed, which purportedly divested him of any interest in the Property. The trial court's findings of fact rested in part on the testimony of

Mark Bumgarner, the notary who notarized the 2000 Deed. Bumgarner had retired by the time of trial, and he testified that while in practice he retained his notary logs for only seven years. N.T. Trial, 5/30/24, at 13. Thus, his records pertaining to the 2000 Deed were long gone. Appellants note, however, that Bumgarner confirmed that his notary stamp on the 2000 Deed evidences that Jason signed it in his presence. Jason counters that, without Bumgarner's records, he is unable to substantiate that he confirmed Jason's identity with a photo ID. Further, the primary corporate officer of the closing company that handled the 2000 Deed served jail time on charges related to his conduct of the now-defunct company. Given the questionable circumstances surrounding the execution of the 2000 Deed, the absence of records pertaining to its execution, and Rebecca's conduct throughout the two decades at issue in this case, the trial court found Jason's testimony credible and Rebecca's not credible. Given the deferential standard of review applicable to this issue, we discern no reversible error in the trial court's finding that the 2000 Deed was procured by fraud and therefore voidable.

Appellants' next argument is that the trial court erred in finding that Jason's financial contributions to his parents for maintenance of the Property substantiated his interest in the Property. Appellants' Brief at 15-16. This argument is not included in Appellants' statement of questions presented, in

violation of Pa.R.A.P. 2116,[3] it is unsupported by citation to pertinent authority, in violation of Pa.R.A.P. 2119(b), and therefore it is unreviewable.

Appellants' next argument is that Jason's actions subsequent to the execution of the 2000 Deed confirm his understanding that he lacked any interest in the Property. Appellants' Brief at 17-18. Specifically, Jason and his wife filed for Chapter 7 bankruptcy in December of 2001. In that filing, Jason declared that he owned no property. Appellants' Brief at 17-18. This evidence is troubling, but Appellants do not explain why Jason's possible perjury in a federal bankruptcy petition undermines the trial court's findings of Rebecca's misconduct in procuring several of the deeds at issue in this action.

Next, Appellants offer a one-paragraph argument claiming that the trial court should not have given weight to evidence that Harold Jr. asked Jason, in 2021 shortly after Harold Sr.'s death, for permission to hunt on the Property. Appellants' Brief at 18-19. This argument is absent from Appellants' statement of questions presented, not supported by any legal authority, and unreviewable.

Appellants next argument, also absent from their statement of questions presented, is that the trial court erred weighing the testimony of John O'Donell ("John") against Appellants in regard to the 2003 and 2005 Deeds. Appellants'

---

[3] "No question will be considered unless it is included in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a).

Brief at 19-20. The only law Appellants cite in support of this argument is *Warehouse Builders and Supply, Inc. v. Perryman*, 257 A.2d 349 (Pa. Super. 1969), which Appellants rely on for the proposition that a plaintiff's self-serving testimony is insufficient to rebut the evidence of a notary's certificate. The *Perryman* Court wrote that "[o]ne who seeks to rebut the presumption of the due execution and acknowledgment of a deed with proof of a forgery must do so by a preponderance of clear and convincing evidence." *Id.* at 350. This Court held that the plaintiff's testimony in that case, "with its inconsistencies, generalities, and probabilities," was insufficient to meet that burden. *Id.*

Instantly, as distinct from *Perryman*, the trial court found Jason to be credible. And in any event, both John and Jeri O'Donell testified to their lack of knowledge of the 2003 and 2005 Deeds. Jason did not rely solely on his own testimony. Because the instant matter is easily distinguishable from the case Appellants cite in support of their argument, we conclude that Appellants have failed to develop a meritorious argument on this issue.

Appellants next two arguments address the 2022 Deed and Rebecca and Harold Jr.'s contributions to the Property over time. Appellants' Brief at 21-23. These arguments are waived and unreviewable, as they are entirely unsupported by citation to authority.

Appellants next argument is that Jason's causes of action were barred by the statute of limitations. Appellants' Brief at 23-24. Appellants develop

an argument regarding the discovery rule, but they fail to identify the limitations period applicable to any of the causes of action Jason' asserted in his complaint. Nor do Appellants develop an argument specific to any of Jason's causes of action. Furthermore, Appellants' argument that Jason was on notice of his lack of interest in the Property in 1998 rests on the 1998 Deed, which the trial court found to be void despite the fact that Jason signed it. As noted above, Appellants have failed to mount a meritorious challenge to that finding. Appellants' statute of limitations argument is legally underdeveloped and factually unfounded.

Next, Appellants argue that the alleged 1997 agreement among Jason, Rebecca, and Harold Sr. was barred by the statute of frauds. Appellants' Brief at 24-25. Under the statute of frauds, a conveyance in fee simple or other estate in land must be written to be enforceable. 33 P.S. § 1; **_Firetree, Ltd._** **_vs. Dep't. of Gen. Servs._**, 978 A.2d 1067, 1073 (Pa. 2009). This argument builds on Appellants' challenge to the alleged oral agreement among Jason, Rebecca, and Harold Sr. in 1997. But the outcome of this trial turned on the validity of the June 13, 1997 deed, and the invalidity of the subsequent deeds at issue. The trial court's judgment essentially enforces the June 13, 1997 Deed. The trial court did not enforce an unwritten oral agreement pertaining to an estate in the Property. Appellants' statute of frauds argument does not merit relief.

In their penultimate argument, Appellants claim that Jason's action was barred by laches. Appellants' Brief at 25-26. "Laches is an equitable doctrine that bars relief when a complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another." **Stilp v. Hafer**, 718 A.2d 290, 292 (Pa. 2002). Laches will bar an action where the defendant can establish (1) a delay arising from the plaintiff's failure to exercise due diligence, and (2) prejudice to the defendant resulting from the plaintiff's delay. **Id.** at 293. Appellants rely on the passage of more than two decades between the 1998 Deed and the filing of this action. They also note the faded memories, and the disappearance of other evidence, such as the destruction of Bumgarner's notary records. But, at bottom, Appellants ask us to overturn the trial court's credibility findings, particularly with respect to the execution of the 1998 Deed.

The trial court credited Jason's testimony that he was unaware, until just before filing this action, that the 1998 Deed altered his interest in the Property and that the 2000 Deed, to which Jason was not a party, vitiated his interest in the Property. The same findings that led the trial court to conclude that the post-1997 deeds were procured by fraud lead inexorably to the conclusion that Jason was not aware of them. Jason's due diligence, or lack thereof, rested on the trial court's assessment of Jason's credibility as compared to Rebecca's. Given the deferential standard of review applicable here, we will not disturb the trial court's findings. Because the record supports

a finding that Jason was unaware of his lack of interest in the Property until shortly before he filed this action, Appellants' laches argument fails.

In their final argument, Appellants assert that the trial court erred in declining to award damages to Rebecca and Harold Jr. for their contributions to the Property. They claim Harold invested $118,000.00 in the Property in a mistaken belief that Jason had no interest in it. Appellants argue that, given the outcome, Harold Jr. should be compensated for that amount. This argument spans a single paragraph and it is unsupported by citation to the record or to pertinent authority, in violation of Pa.R.A.P. 2119(b) and (c). Appellants' damages argument is underdeveloped and unreviewable.

Because Appellants have failed to articulate any valid legal grounds in support of their numerous claims of trial court error, we affirm the judgment.

Judgment affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 2/27/2026