# Union Trust Company of New York *v.* Gilpin, Appellant.

*Payment—Mistake—Will—Verdict.*

1. Where a testator leaves to a trust company called "United States Trust Company" two sums of $10,000 each to be held in trust for two sisters for life with remainder to the survivor in the event that the other die without issue, and by the second paragraph of his will leaves two sums of $10,000 each to a trust company called the "Union Trust Company" in trust for the same two sisters, but with remainder over to other parties in the event of their dying without issue, and after the death of one of the sisters the Union Trust company through a mistake in reading the will paid the sum of $10,000 to the surviving sister instead of the parties entitled to it under the second paragraph, such sum may be recovered back by the Union Trust Company from the sister to whom it was mistakenly paid.

2. In an action to recover such money the court left two questions to the jury, (1) was the payment made by mistake on the part of plaintiff's officers, and (2) was it caused by inadvertence in reading the first paragraph of the will as the paragraph under which plaintiff was acting as trustee; and was that due to the similarity of the names mentioned in the will. The first question was answered "yes," the second "no." Thereupon a third question was submitted, viz: "State what was the character of the mistake?" This was answered "Carelessness of the officers of the Union Trust Company." The court asked the jury in what particular the officers had been careless, and the foreman said, "in reading the will." These words were then added to the answer. The court then directed a verdict for plaintiff. *Held,* that the court committed no error either in propounding the questions to the jury, or in directing a verdict for the plaintiff.

Argued Feb. 19, 1912. Appeal No. 235, Jan. T., 1911, by defendant from judgment of C. P. Lackawanna Co., Jan. T., 1908, No. 324, on verdict for plaintiff in case of The Union Trust Company of New York, Trustee, *v.* Mary Helen Gilpin. Before FELL, C. J., BROWN, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover back money paid under a mistake of fact. Before NEWCOMB, J.

At the trial the court gave binding instructions for plaintiff.

The facts appear by the opinion of NEWCOMB, J., on motion to amend the verdict, which was as follows:

This suit was brought to recover money paid to defendant by mistake.

The payment was made in October, 1902, and arose out of the management of a trust fund which had come to plaintiff's hands in 1893, under the second paragraph of the will of Robert McKim. In round figures the fund was $100,000.00, of which two equal one-tenth parts were held, one for the use of defendant and the other for that of her sister, Mrs. Hart, but each during life. At their death the principal in each case went to their respective issue, if any; otherwise to the executors of the will. Mrs. Hart's maiden name was Angelica Church, and she was so named in the will.

Under the provisions of the first paragraph of the will another $100,000.00 came to the hands of the United States Trust Co., also of New York. Inter alia sums of $10,000.00 each were by it held for these sisters for life with remainder in each case to the survivor in the event that the other died without issue.

In the summer of 1902 Mrs. Hart died leaving no issue. In October plaintiff was advised of the fact by letter of Mr. Gilpin suggesting that he understood his wife thereby succeeded to the fund held for her sister's use. To this there was a prompt reply assenting to that understanding with a formal receipt enclosed for Mrs. Gilpin's signature in order to close the account.

Hence, the evidence of payment is a written instrument duly executed and delivered to plaintiff. Mrs. Gilpin thus acknowledged the receipt of $10,000.00, together with some accrued income, being "the one-tenth part of the trust fund mentioned in said first paragraph of said will heretofore held by Union Trust Co. for

Angelica Church," etc.   There was other reference to
this particular fund and paragraph "in pursuance of
which," it was set forth, defendant "had become entitled"
to the principal on the death of her sister; and in con-
sideration of the payment, it proceeded to say, plaintiff
was discharged from its liability on account of that
fund.

Other than in the matter of Mrs. Hart's death, these
assumptions of fact, forming the consideration of the
payment, were radically erroneous.   It was, therefore,
undisputed and indisputable that the money was paid by
mistake.

The fund which the parties had in mind had never
been in plaintiff's hands.   With the trust described in
the voucher the plaintiff had nothing whatever to do.
That was the fund in the hands of the other company.
The two trusts were quite as distinct and independent
of each other as two separate paragraphs of a written
instrument could make them.   The death of her sister
in no way affected the relations of Mrs. Gilpin with the
plaintiff Trust Co.   The plaintiff took nothing by the
release.   The liability which it purported to discharge
had never existed.  All this is apparent upon a mere read-
ing of the will, if read with care and attention to what
it says.   There is nothing ambiguous about either para-
graph, calling for anything more than careful reading.
So that upon examination of the two instruments, the
bequest on the one hand and the receipt on the other, the
inference would seem to be irresistible that the payment
was the result of mistake on part of some officer of the
Trust Company in failing to note the identity of the
trustee named in the first paragraph on the occasion of
being advised of Mrs. Hart's death and the defendant's
understanding in the premises.   There is nothing outside
of these writings to throw any light on the nature and
character of the mistake except this correspondence,
and nothing in that to weaken the inference arising from
the terms of the receipt.   There was no attempt to im-

pair plaintiff's equity unless it be in the offer to prove
that defendant had in the meantime spent the money
so that repayment would now be a hardship; and that
is believed to be immaterial for reasons to be mentioned
below.

From the inception of the suit the close question has
seemed to be whether it wasn't a case for binding in-
structions for plaintiff. The court being divided on the
question, the defendant was given the benefit of the
doubt and allowed to go to the jury. 6. (But, instead of
a general submission, two specific questions were first
submitted to the jury subject to further instruction upon
return of their answers. These were as follows: "(1)
Was the payment of October 22, 1902, made by mistake
on part of plaintiff's officers? (2) Was it caused by
inadvertence in reading the first paragraph of the will
as the paragraph under which plaintiff was acting as
trustee; and was that due to the similarity of the names
of the two trustees mentioned in the will?" The first
was answered, "Yes;" the second, "No." Thereupon a
third question was submitted, viz: "State what was the
character of the mistake?" This was returned with the
somewhat indefinite answer: "Carelessness of the offi-
cers of the Union Trust Co. of New York." Their atten-
tion being called to the necessity of stating in what par-
ticular the officers had been careless, it was disclosed
that what was meant was carelessness in reading the
will; and thereupon, by hand of their foreman, the jury
were permitted to complete the answer in open court.
In order to guard against possible misunderstanding
the answer as so completed was then first read aloud to
them, not by the clerk, but by the court, and they were
asked if that was correct—as appears by the transcript
—to which the foreman replied "yes," and the others
nodded assent in the usual way. Upon that a verdict
was directed for plaintiff, for the reasons then stated
and which in my judgment made it inevitable.)

These circumstances are referred to because the

learned counsel seeks to support the present motion, in part, by the foreman's testimony. The effort is to reform the finding of the jury by substituting the term "construing" in place of "reading" the will, thus characterizing the mistake as one of law rather than of fact, and so to defeat the action.

Accordingly the motion is to amend the verdict to one in favor of defendant. Aside from the foreman's version of what was in the minds of the jurors, the motion is based on the answer to the second question. The point made is that this negatived the specific averment upon which plaintiff's case turned, and was therefore a finality. The contention is believed to be unsound. If for the jury at all the case was such as made it important to have the benefit of their unbiased judgment as to the nature and character of the mistake. That wasn't accomplished by the first two answers. They left the matter just where it was at the outset. The second question was probably somewhat inapt by reason of its having two branches. I can think of no good reason why the courts in attempting to administer the law through trial by jury may not submit any question appropriate to the issue of fact. That the final question here was inappropriate to that purpose has not been suggested. The answer affirms the substance of plaintiff's allegation. As such, it warranted the verdict as directed, unless recovery is barred by the fact of plaintiff's negligence; or the finding be open to revision on the deposition of a juror; and this, for no better reason than that in the opinion of the witness "no person can read a will without putting a construction on it." This is manifestly incompetent and merits no consideration: Smalley v. Morris, 157 Pa. 349. Citations could be multiplied if the occasion called for it. For the sake of discussion it may be conceded that the jury would have held the Trust Co. to the loss of the money if at liberty to do so. They were called upon, however, only to decide the facts, unmoved by sympathy or prejudice

for or against either party, regardless of the consequences. Undoubtedly their conclusion was correct. No one could read the will attentively without being forcibly impressed with the fact that a blunder had been made. That would be quite as apparent to a jury of average understanding as to a lawyer. The final answer here was not only consistent with the evidence, but it is not apparent how there could have been any escape from it.

Turning now to the effect of plaintiff's negligence, I take it to be well settled that it will only bar recovery where defendant has irrevocably changed his position before demand made. 2 Street's Found. Leg. Liab. 213; Kelly v. Solari, 9 M. & W. 54; Keener on Quasi-Contracts, 70 et seq; Appleton Bank v. McGilvary, 70 Mass. 518; Girard Trust Co. v. Harrington, 23 Pa. Super. Ct. 615; Lawrence v. Bank, 54 N. Y. 432. It has been sometimes said that plaintiff's laches will preclude recovery unless defendant can be put in statu quo. And it is upon this principle that it was sought to be proven here that defendant had spent the money. There is neither reason nor authority, however, to support the theory that the mere fact of the money having been spent amounts to an alteration of defendant's legal position. It is enough to say that if it were so, the instances in which the right to recover has been affirmed would have been much less frequent.

Essentially the claim here is founded on a transaction in which there was a total failure of consideration, due to a mutual misunderstanding as to the existence of the subject matter. In such case where the plaintiff's equity is complete there can be no doubt of his right to recover: 2 Street's Found. Leg. Liab. 211; Martin v. Sitwell, 1 Show. K. B. 156; McDonald v. Lynch, 59 Mo. 350. And it has been so held whether the mistake be one of law or fact: Champlin v. Laytin, 6 Paige 189. In principle and analogy it is not unlike a suit for breach of warranty of title. So, in a case differing from this in

no essential particular, where by mistake a legacy had been paid to one not entitled under the will it was held that the money could be recovered whether the mistake was either of fact or law: Northrop v. Graves, 19 Conn. 548. Speaking by Chief Justice CHURCH, the court said: "We mean distinctly to assert that where money is paid by one under a mistake of his rights and his duty, and which he was under no legal or moral obligation to pay, and which the recipient has no right in good conscience to retain, it may be recovered back in an action of indebitatus assumpsit whether such mistake be one of fact or law; and this we insist may be done both upon principle of Christian morals and the common law."

The case affords a good illustration of the modern tendency of the courts to limit the earlier doctrine which denied in general the right to recover where money had been paid under a mistake of law.

We are not called upon to decide whether the present case falls outside the general rule. 6. (It was tried on the theory of mistake of fact only. Assuming it to have been for the jury, it is believed the facts, so far as in dispute, were well found in the affirmative, and that the verdict was regular. This is decisive against the motion, and the rule to amend is discharged.)

*Errors assigned,* among others, was (1, 2) in instructing the jury as to answers to questions; (3) in giving binding instructions for plaintiff and (6) in refusing to amend the verdict.

*Samuel B. Price* and *Cole B. Price,* for appellant.—It was error in the court to submit the first and third questions to the jury: Morse v. Morse, 25 Ind. 156; Crane v. Reeder, 25 Mich. 303; Balch v. Grand Rapids &c R. R. Co., 78 Mich. 654 (44 N. W. Repr. 151).

The submission of the third question by the court to the jury, after their answers to the first two had been returned, was error.

To suggest or dictate to the jurors the answers to particular questions of fact submitted to them for findings thereon, is error; and it is also error when the special findings of fact are returned by the jury, for the court to change materially the purport of such findings: Usher v. Hiatt, 18 Kan. 195; Ryan v. Rockford Ins. Co., 77 Wis. 611 (46 N. W. Repr. 885).

The verdict should have been amended to read for defendant: Cohn v. Scheuer, 115 Pa. 178; Murland v. English, 214 Pa. 325; Clouser v. Patterson, 122 Pa. 372; Com. v. Chathams, 50 Pa. 181; Standard Sewing Machine Co. v. Ins. Co., 201 Pa. 645.

The question to be decided in this case was for the jury: Primm v. Haren, 27 Mo. 205; Reynolds v. Richards, 14 Pa. 205; State v. Patterson, 68 Maine 473; Wilson v. Board of Education, 63 Mo. 137.

There is no sufficient evidence to support a judgment for plaintiff: Ward v. McCue, 31 Pitts. Leg. Journ. 160.

It is settled law that one who voluntarily pays money with full knowledge or means of knowledge of all the facts, without any fraud having been practiced upon him, cannot recover it back by reason of the payment having been made in ignorance of the law: Gould v. McFall, 118 Pa. 455; Real Estate Savings Institution v. Lindner, 74 Pa. 371; Irvine v. Hanlin, 10 S. & R. 219; Espy v. Allison, 9 Watts 462; Boas v. Updegrove, 5 Pa. 516; During's App., 13 Pa. 224; Natcher v. Natcher, 47 Pa. 496; Deysher v. Triebel, 64 Pa. 383; Union Ins. Co. v. Allegheny, 101 Pa. 250.

*W. W. Watson, W. S. Diehl* and *Albert L. Watson,* for appellee.—The fact that the person making the payment has the means of knowledge at hand and overlooks the same by an inadvertence, is immaterial if the party receiving the same is not entitled to it: Girard Trust Co. v. Harrington, 23 Pa. Super. Ct. 615; Dotterer v. Scott, 29 Pa. Super. Ct. 553; Reed v. Horn, 143 Pa. 323; Lawrence v. American Nat. Bank, 54 N. Y. 432; White v.

Continental Nat. Bank, 64 N. Y. 316; Kingston Bank v. Eltinge, 40 N. Y. 391.

It is well settled law in this state and elsewhere that the testimony of a juror cannot be received to change the verdict rendered by a jury and recorded: Smalley v. Morris, 157 Pa. 349; Cluggage v. Swan, 4 Binn. 150; Hutchinson v. Sandt, 4 Rawle 234.

PER CURIAM, March 18, 1912:

The judgment is affirmed on the opinion of Judge NEWCOMB.