Peoples First National Bank and Trust
Company, Appellant, *v.* Ratajski,
Appellant.

Argued March 18, 1960. Before JONES, C. J., MUS-
MANNO, JONES, COHEN, BOK and EAGEN, JJ.

420

[redacted]

*Philip R. McLaughlin,* with him *Paul R. Jenkins,* and *Campbell, Casteel & Thomas,* for plaintiff.

*William J. Krzton,* with him *Esler W. Hays,* for defendant.

OPINION BY MR. JUSTICE BOK, May 4, 1960:

This is an action in equity for the restitution of real and personal property. The main allegation is the abuse of a confidential relationship between uncle and niece, and this was the chancellor's basic finding.

The chancellor, Judge A. MARSHALL THOMPSON, died before exceptions to his adjudication could be disposed of. So did the plaintiff, in 1959, and his place on the record was taken by the corporate administrator, c.t.a. The chancellor found that defendant held the decedent's property as constructive trustee and directed her to return all of it except certain real estate and dividends from certain shares of stock, which she might keep on the theory of compensation for services rendered. The court en banc approved this solution. Defendant appealed from the order to restore any of the property, and the administrator appealed from the order allowing her to keep the real estate and the dividends.

The decedent came to this country from Poland in 1910 at the age of eighteen and after study was ordained a priest in the Polish National Church. His study and later his pastorate were predominately Polish, and while he learned English, it is apparent from

his testimony that he never became at home in the language.

Defendant was his niece and closest relative in this country. She married in 1937 and was widowed in 1945. He suffered a severe heart attack and was ill from that and from osteoarthritis during the last fifteen years of his life.

In 1936 decedent made defendant the beneficiary of his $10,000 life insurance policy. Between 1942 and 1946 he bought $750 in United States Savings Bonds in both their names. In 1943 he bought land in Lawrence County worth $15,000 and at about the same time gave defendant his power of attorney to manage this property. During this period she came to visit him with fair regularity. Having bought five shares of stock in 1923, he saw it increase to 560 shares worth $45 per share by the time of the hearing: during the period of their association he put this stock in both names.

In 1946 defendant went to live with decedent under an arrangement that she keep house, cook, and act as his secretary in return for room and board and $25 per month. By 1953 she had finally contrived to put in her own name and to get possession of all of his property, to wit: a deed to the Lawrence County real estate, an assignment of the stock, the Savings Bonds, a Polish Government bond of $1000, the paid-up policy of which she was the beneficiary, one checking and one savings account in a bank at Tarentum, Pennsylvania, another paid-up policy with the Polish National Union, several accident and health policies, a gold watch, and a trunk containing correspondence and records. Trusting her, he seems to have had the habit of signing papers in blank or without reading them.

Between 1953 and 1959, when he died, decedent went to Rome, Louisiana, San Francisco, and Louisiana again. Defendant went with him at his invitation or

acquiescence, since he needed care. They appeared to have shared the expenses of these trips, but as defendant had control of all of the decedent's property, it is unlikely that the division was anywhere near equal. The purpose of this traveling was to secure his re-admission to the Roman Catholic Church. This was done, and when decedent died he was in residence at the Maryhill Seminary in Louisiana. Defendant, whose presence had become superfluous and embarrassing at the Seminary, had gone back to Pennsylvania.

Meanwhile, on their return from Rome late in 1953, decedent discovered that his niece had everything he had once owned and demanded its return. She refused and he sought counsel. The Treasurer of the company, whose stock had proved such a good investment, testified that decedent called at his office and not only was indignant over the change in ownership but was also surprised to see an authorizing letter over his purported signature. There was also a meeting between decedent's counsel and defendant and her counsel at which, his counsel testified, defendant admitted that the property she was holding was the decedent's and that she was willing to return all of it except the real estate. Defendant testified that she didn't remember the discussion and hence it has some significance that she did not call her counsel as a witness.

In 1946 and after, the only income decedent had, apart from his properties that defendant took into her own name, was $125 per month from a disability policy. It was out of this sum that he paid her $25 per month and his own expenses.

Defendant's case was that the relationship with her uncle was always close and affectionate; that he gave her his property in consideration of her helping and caring for him for the rest of his life, and that they pooled their money for traveling and living expenses. She did not deny that she had taken all of his property

into her own name, her defense being that it was a pure gift.

We accept the decedent's version because of the chancellor's basic finding that there was a confidential relationship and that defendant abused it. It seems the obviously correct one from the record. A chancellor's findings of fact, approved by the court en banc, have the weight of a jury's verdict and will not lightly be disturbed: *Commonwealth Trust Co. v. Szabo,* 391 Pa. 272 (1957), 138 A. 2d 85. As Mr. Justice BARNES said in *McCown v. Fraser,* 327 Pa. 561 (1937), 192 A. 674: "The question now for consideration is not 'whether we, as hearing judges, would have reached the same conclusion, but whether the evidence may fairly be said to support the conclusion of the judge who saw and heard the witnesses'; Custis v. Serrill, 321 Pa. 154." Decedent was financially able and canny in business, but it is not required that the victim of confidence misplaced be a moron. There was reason enough for dependence and for confidence justifiably reposed in decedent's poor health and difficulty with English.

Justice STERN defined a confidential relationship in *Hamburg v. Barsky,* 355 Pa. 462 (1947), 50 A. 2d 345, as follows: "Confidential relation is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed; in both an unfair advantage is possible. . . . A confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good

faith for the other's interest: Drob v. Jaffe, 351 Pa. 297, 300, 41 A. 2d 407, 408."

Once the relationship is established, the burden of proof shifts to the recipient to justify the gift. In *Lochinger v. Hanlon*, 348 Pa. 29 (1943), 33 A. 2d 1, Mr. Justice STEARNE said: "Generally speaking, the burden of showing both incapacity and undue influence rests on those asserting the facts. But this rule does not apply where the relation of the parties to each other, or some vicious element in connection with the transaction, is such that the law compels the recipient of the bequest or gift to show that it was the free, voluntary and intelligent act of the person giving it. Though there may be capacity to give, the law, nevertheless, casts this burden on the recipient. The factors which bring this rule into action are fraud, confidential relation, weakness of mind not otherwise incapable, and gross deception. When these appear in the course of an investigation as to the validity of gifts, the burden of proof will immediately shift."

Although the chancellor did not come to a specific conclusion that defendant had not met her burden of proof, it is implicit in his conclusion that defendant is a constructive trustee and should return the property, minus the noted exceptions. Her story might be more plausible if she had not cleaned her uncle out so completely: see *Corrigan v. Conway*, 269 Pa. 373 (1921), 112 A. 466. It may well be that she wanted to be sure that his estate should not go to more impersonal beneficiaries, for there was no other relative but her in this country. A little more faith might have served her better; as Chamfort has said, it is easier to make certain things legal than to make them legitimate, and equity has an eye for the legitimate. Defendant has proved herself too eager to be believed. As decedent said: "I was working for that forty-five years and I save every penny for my old age, not to give away."

We are also aware that decedent's story has some corroboration, while defendant's has none.

The court below had no real basis for exempting the real estate and the dividends. The time for such hopeful compromises is before trial rather than after, and if defendant is a constructive trustee of any of the property there is no logical reason, other than generosity, why she should be trustee for less than all of it. She undoubtedly worked hard for what she got, but her labor cannot escape the taint of being part of the scheme to enrich herself. She is in the position of the faithless trustee who may not receive compensation: *Kenin's Trust Estate (No. 1)*, 343 Pa. 549 (1942), 23 A. 2d 837.

On the plaintiff's appeal, we therefore direct that defendant shall convey the Lawrence County real estate to the plaintiff and shall also pay to the plaintiff the accumulated dividends from the Union Electric Company stock, amounting to $4928, paid to her from the date in 1953, when the stock was assigned to her, until June 13, 1957, the date of suit: dividends since the date of suit should not be turned over to defendant but retained in the estate, or if they have been so turned over, she should return them. Defendant's appeal is dismissed.

Thus modified, the decree is affirmed, costs to be paid by the defendant.