353 A.2d 417

**Harry E. YOHE, Appellant,**

v.

**Doris R. YOHE, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 16, 1975 (J–36).

Decided March 17, 1976.

Richard P. Nuffort, Geisenberger, Zimmerman, Pfannebecker & Gibbel, Lancaster, for appellant.

John P. Hohenadel, Lancaster, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, and NIX, JJ.

## OPINION

JONES, Chief Justice.

Appellant husband brought this equitable action seeking to set aside a conveyance to his wife, the appellee, of

his interest in their jointly held residence. The basis of appellant's claim is that the real estate was conveyed under circumstances which give rise to a constructive trust. At the close of appellant's case the chancellor entered a compulsory nonsuit. Appellant's motion to take off the nonsuit was denied,[1] and this appeal followed.[2]

A judgment of nonsuit is properly entered if "the plaintiff shall have given no such evidence as in law is sufficient to maintain the action. . . ." Act of March 11, 1875, P.L. 6, § 1, *as amended,* 12 P.S. § 645 (Supp.1975) ; *see* Pa.R.C.P. 1512.

> "It is hornbook law that a judgment of nonsuit can be entered only in clear cases and plaintiff must be given the benefit of all evidence favorable to him together with all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in his favor [citations omitted]."

*Flagiello v. Crilly,* 409 Pa. 389, 390–91, 187 A.2d 289, 290 (1963). *See Tolbert v. Gillette,* 438 Pa. 63, 260 A.2d 463 (1970), and the cases cited therein. The issue before us is whether under this standard appellant presented at trial sufficient facts to make a prima facie showing that his wife took the property interest in question as a constructive trustee for her husband. Finding that a nonsuit was improperly granted under this standard, we must reverse and remand for a complete trial.

The parties were married on January 20, 1950, and are still lawfully married. They later purchased the property in question, subject to a mortgage, taking title in joint names as tenants by the entireties. On January 3, 1972, the mortgage debt was satisfied and on January 26, 1972, appellant executed a deed to his wife of his un-

1. It does not appear that appellant's motion to take off the nonsuit was passed upon by a court en banc. *See* Act of March 11, 1875, P.L. 6, § 1, *as amended,* 12 P.S. § 645 (Supp.1975).

2. Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(4), 17 P.S. § 211.202(4) (Supp.1975).

divided one-half interest in the property for a recited consideration of $1.00.[3] The opinion of the chancellor in support of his order refusing to take off the nonsuit accurately summarizes appellant's account of the circumstances surrounding his signing of the deed:

"The plaintiff received no money to sign the deed and no promises were made by the defendant if he would sign the property over to her. There was no agreement or understanding between the parties that the title to the property was to be transferred to the defendant. According to the plaintiff he was asked by his wife to come uptown to the lawyer's office to sign the papers the lawyer had.

The plaintiff went into the lawyer's office and the secretary had two papers on the desk facing him and told him, 'This is for the new deed. You sign here and here.' The plaintiff signed believing he was getting a new deed after paying off the mortgage. The plaintiff had not consulted an attorney and signed the deed without reading it because he trusted his wife and never questioned anything she did.

The record is clear that the defendant used no subterfuge or fraud to persuade the defendant [sic] to sign the deed and nothing was done to prevent the plaintiff from reading what he signed. No questions were asked by the plaintiff and he was not misled in any way by the defendant or the lawyer's secretary."

 First, appellant has not urged, nor are we permitted to grant relief on the basis of mistake. *Dilli-*

---

**3.** Either husband or wife may convey his interest in entireties property to the other. Act of May 13, 1927, P.L. 984, § 1, 69 P.S. § 541.

Appellant is not suing to destroy the entireties estate and vest exclusive interest in himself. This he could not do during the duration of the marriage. *Backus v. Backus,* 464 Pa. 380, 384 n. 3, 346 A.2d 790, 792 n. 3 (1975); *Shapiro v. Shapiro,* 424 Pa. 120, 136, 224 A.2d 164, 173 (1966). Rather, the imposition of a constructive trust under these circumstances would in effect return the property to its prior entireties status.

*plaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). While it is unfortunate if the appellant signed the deed without realizing its consequences, he was under no coercion to do so. Appellant's only "mistake" appears to be in not being prudent enough to read the deed before signing it. As we have stated, "If a party, who can read, will not read a deed put before him for execution . . . he is guilty of supine negligence, which . . . is not the subject of protection, either in equity or at law." *O'Reilly v. Reading Trust Co.*, 262 Pa. 337, 343–344, 105 A. 542, 544 (1918); *Waslee v. Rossman*, 231 Pa. 219, 231, 80 A. 643, 647 (1911); *Greenfield's Estate*, 14 Pa. 489, 496 (1850); *see also General Refrigerator and Stove Fixture Co. v. Fry*, 393 Pa. 15, 141 A.2d 836 (1958). The integrity of signed documents must be respected especially in land transactions in order for there to be certainty in the law. We cannot rescind conveyances merely because one party later claims that he did not understand what he was signing when there was nothing to prevent him from merely reading the deed to discover its contents.

Appellant does contend that the chancellor applied the wrong burden of proof to these facts because he relied upon our decision in *Lapayowker v. Lincoln College Preparatory School*, 386 Pa. 167, 125 A.2d 451 (1956), in which we held that "[w]hen a husband purchases real or personal property with his own funds and . . . transfers such property to his wife without consideration, there is a factual presumption that a gift was intended . . . ." 368 Pa. at 171, 125 A.2d at 454. However, the chancellor also cited *Shapiro v. Shapiro*, 424 Pa. 120, 129, 224 A.2d 164, 169 (1966), which states that if a husband obtains his wife's property without adequate consideration, there is a rebuttable presumption of trust in her favor unless the husband can show affirmatively that he took no undue advantage of her. Appellant argues that this difference in treatment

between spouses violates the Equality of Rights Amendment to the Pennsylvania Constitution.[4] Appellant's argument is answered by our recent decision in *Butler v. Butler*, 464 Pa. 522, 528, 347 A.2d 477, 480 (1975), in which we held that in order to avoid an unconstitutional presumption in this situation "anytime either a husband or wife contributes towards the purchase of entireties property their contribution is presumed to be a gift to the other."[5] Thus, since *Butler* abolished the one-sided presumption of *Shapiro* and extended the presumption of *Lapayowker* to wives also, it appears that appellant has no basis to complain. The chancellor did apply the correct presumption under our new rule, and thus there was no constitutional violation.

▮▮▮▮ Appellant further contends that under these circumstances he is entitled to the imposition of a constructive trust in his favor. The imposition of a constructive trust is an equitable remedy designed to prevent unjust enrichment. *See* Restatement of Restitution § 160 (1937); A. W. Scott, Trusts §§ 462, 462.1 (3d ed. 1967). A constructive trust arises "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. . . ." Restatement of Restitution § 160 (1937); *Truver v. Kennedy*, 425 Pa. 294, 305, 229 A.2d 468, 474 (1967); *Chambers v. Chambers*, 406 Pa. 50, 54, 176 A.2d 673, 675 (1962); *Gray v. Leibert*, 357 Pa. 130, 135, 53 A.2d 132, 135 (1947); A. W. Scott, Trusts § 462.1 at 3415 (3d ed. 1967). A transferee is under such an equitable duty to reconvey property to the transferor if the transfer was induced by fraud, duress, undue influence,

4. Pa.Const. Art. I, § 28 (adopted May 18, 1971).

5. While *Butler* concerned a contribution to an entireties property, we see no reason to limit its holding to gifts of that nature. *See generally Shapiro v. Shapiro*, 424 Pa. 120, 133–34, 224 A.2d 164, 171 (1966).

or mistake, or if the transfer was the result of an abuse of a confidential relationship. *Chambers v. Chambers,* 406 Pa. at 54, 176 A.2d at 675.

In the case at bar, there was no proof of fraud, duress, or undue influence by the appellee. Appellant asserts, however, that the chancellor erred in not finding a confidential relationship between himself and his wife which would have imposed upon her an obligation to disclose material facts. Under our case law, the marital relationship is not confidential as a matter of law. It is a question of fact and arises when one party places confidence in the other with a resulting superiority and influence on the other side. *Butler v. Butler,* 464 Pa. 522, 530, 347 A.2d 477, 481 (1975); *Stewart v. Hooks,* 372 Pa. 542, 547–48, 94 A.2d 756, 758–59 (1953); *see generally Truver v. Kennedy,* 425 Pa. 294, 305–07, 229 A.2d 468, 474 (1967). The chancellor recognized this principle and specifically stated in his opinion that he found no proof of a confidential relationship between the parties. The basis of this finding was the evidence of marital discord which the parties had been experiencing for some time. However, taking all the evidence favorable to the appellant and all reasonable inferences in his favor, the imposition of a nonsuit was inappropriate. The appellant had introduced evidence that the parties had been married for twenty years and that appellee handled the financial affairs of the marriage. Further, in his opinion, the chancellor stated that appellant "signed the deed without reading it because he *trusted* his wife." (Emphasis added.) In view of these contradictions and the state of the record, it would be far better to hear the defense so that an appellate court may have the benefit of findings of fact and conclusions of law by the chancellor which have been considered by the court en banc. *Schwartz v. Urban Redevelopment Authority of Pittsburgh,* 411 Pa. 530, 192 A.2d 371 (1963); *Shechter v. Shechter,* 366 Pa. 30, 76 A.2d 753 (1950).

This is not a "clear" case where the imposition of a nonsuit is warranted.

Decree of chancellor reversed and case remanded to court below for a new trial. Each party to bear own costs.

POMEROY, J., filed a concurring opinion.

ROBERTS, J., concurs in the result.

MANDERINO, J., did not participate in the consideration or decision of this case.

POMEROY, Justice (concurring).

I agree with the Court that appellant made a *prima facie* showing that his wife, the appellee, stood in a confidential relationship with respect to him. This conclusion is warranted by appellant's testimony that he trusted and relied upon his wife, as well as by the wife's testimony, when called as on cross-examination, that she paid the bills and generally handled the family finances, even after the parties had begun to experience marital difficulties.

Once it is determined that a confidential relationship existed, the burden of proof shifted to the appellee to show that she did not abuse that relationship.[1] Because the effect of the judgment of non-suit was to deny appellant relief before the appellee was called upon to sustain her burden of showing that appellant was not entitled to relief, it was improperly entered.

I am also of the opinion that, on this record, appellant made a gratuitous conveyance of an interest in real property under a unilateral mistake of material fact. This is

1. See *Shydlinski v. Vogt,* 406 Pa. 534, 179 A.2d 240 (1962); *Peoples First National Bank v. Ratajski,* 399 Pa. 419, 160 A.2d 451 (1960); *Lochinger v. Hanlon,* 348 Pa. 29, 33 A.2d 1 (1943). Cf. *Stanis v. Simpson,* 452 Pa. 57, 305 A.2d 29 (1973); *Fuller v. Fuller,* 372 Pa. 239, 93 A.2d 462 (1953).

an independent ground on which appellant may be entitled to relief.

The opinion of the Court states that we may not consider this issue because it has not been advanced by appellant. With respect, I must disagree. In the court below, as well as in this Court, appellant has alleged two significant facts: *first,* that when he signed the deed in question *he was not aware that he was making a conveyance to his wife*; and *second,* that this act on his part was induced by the conduct of his wife, the grantee. Appellant has argued that together these two facts entitle him to relief. The first fact alone is tantamount to an allegation of mistake, and is not to be avoided because coupled with the additional allegation of inducement.[2] Because Pennsylvania law on this subject is unclear, I deem it worthwhile to explain why I think the doctrine of mistake may entitle the appellant to relief in the circumstances of this case.

In deciding whether appellant is entitled to relief solely on the basis of mistake, it must be assumed that appellant's mistake as to the nature of the document he was signing was a unilateral mistake, not induced by his wife nor one of which she had knowledge.[3] It is, of course, well settled that such a mistake is not a ground for relief in a case in which the conveyance was made for consideration. See *Kutsenkow v. Kutsenkow,* 414 Pa. 610, 202 A.2d 68 (1964) ; *Bosler v. Sun Oil Co.,* 325 Pa. 411, 190 A. 718 (1937) ; Restatement of Restitution § 163, Com-

**2.** Although stating that the mistake issue has not been raised, the Court considers it nevertheless: "Appellant's only 'mistake' appears to be in not being prudent enough to read the deed before signing it. . . . We cannot rescind conveyances merely because one party later claims that he did not understand what he was signing when there was nothing to prevent him from merely reading the deed to discover its contents." [Opinion of the Court, *ante* at 420.]

**3.** As to the mistake issue, the burden of proof remained on appellant, and the chancellor found that appellant had failed to introduce evidence that the appellee either induced appellant's mistake or knew of it.

ment b & Illustration 2 (1937).[4] It must be emphasized, however, that in the instant case appellant received no consideration for his conveyance of the property in question.

With regard to gratuitous conveyances such as the one here involved the courts of this state have developed no clear rule. It was held in *Greenfield's Estate,* 14 Pa. 489 (1850) that a gratuitous conveyance of real property could not be set aside on the ground that the grantor was not aware of its contents.[5] But later, in *Shedwick v. Prospect Methodist Episcopal Church,* 160 Pa. 57, 28 A. 499 (1894), this Court held that a grantor who conveys by deed of gift more land than he had intended to grant may have the deed reformed to reflect to his actual intent. The decision in *Shedwick* is consistent with the rule which has been applied in other jurisdictions [6] and in my view mandates the granting of relief in the instant case.

Moreover, the decisions of this Court in cases involving other types of transactions militate in favor of the granting of relief for unilateral mistake in the gratuitous conveyance of real estate. It has been held, for example, that a settlor of a trust who executed the trust instrument under a mistake may have the document reformed

---

**4.** Cf. *Line Lexington Lumber & Millwork Co., Inc. v. Pennsylvania Publishing Co.,* 451 Pa. 154, 301 A.2d 684 (1973); Restatement of Contracts § 503 (1932); compare Restatement (Second) of Contracts § 295 (Tentative Draft No. 10, 1975).

**5.** See also *Waslee v. Rossman,* 231 Pa. 219, 80 A. 643 (1911), in which a mortgagee was precluded from foreclosing on a mortgage where he had conveyed the subject property by a deed which mistakenly recited that the mortgage had been satisfied.

**6.** See *Dodge v. United States,* 413 F.2d 1239 (5th Cir. 1969); *Gray v. Gray,* 233 Ark. 310, 344 S.W.2d 329 (Ark.1961); *Tyler v. Larson,* 106 Cal.App.2d 317, 235 P.2d 39 (1951); *Jonas v. Meyers,* 410 Ill. 213, 101 N.E.2d 509 (1951); *Collins v. Commonwealth,* 324 S.W.2d 406 (Ky.1959); *Laundreville v. Mero,* 86 Mont. 43, 281 P. 749 (1929); Annotations, 69 A.L.R. 423, 430–31 (1930); 128 A.L.R. 1299, 1302 (1940).

to conform to his true intent,[7] that an executor who pays money to one whom he mistakenly believes to be a legatee under the will of his testator is entitled to recover the money paid,[8] and that a bank which mistakenly causes *mortgages of which it is the holder to be satisfied of record* may have the satisfactions stricken from the record and the mortgages reinstated.[9] Moreover, it is "hornbook law" that an intention to make a gift is an essential ingredient in the making of a valid gift of personal property.[10] I see no logic in insuring that a person may not relinquish ownership of a trinket or a small sum of money unless he has the specific intent to do so, while allowing him inadvertently to give away real estate of great value without any intent to do so.

The Restatement of Restitution (1937) also supports the view that persons who make gratuitous transfers of real property under a unilateral mistake of material fact are entitled to relief. Section 163 of the Restatement provides:

> "Where the owner of property transfers it as a result of a mistake of such character that he is entitled to restitution, the transferee holds the property upon a constructive trust for him."

This black letter statement is amplified with respect to unilateral mistake in Comment *b* to the Section. That Comment states in part that "[w]here a person in a gift transaction confers a benefit upon another as a result of

7. *Scholler Trust,* 403 Pa. 97, 169 A.2d 554 (1961); *Irish v. Irish,* 361 Pa. 410, 65 A.2d 345 (1949); see *Duncan Trust,* 426 Pa. 283, 289, 232 A.2d 717 (1967); *La Rocca Trust,* 411 Pa. 633, 192 A.2d 409 (1963).

8. *Kunkel v. Kunkel,* 267 Pa. 163, 110 A. 73 (1920); *Union Trust Co. v. Gilpin,* 235 Pa. 524, 84 A. 448 (1912).

9. *First National Bank of Sunbury v. Rockefeller,* 333 Pa. 553, 5 A.2d 205 (1939).

10. See, *e. g., Provident Tradesmens Bank & Trust Co. v. Kabian,* 414 Pa. 554, 201 A.2d 424 (1964); *Bunn's Estate,* 413 Pa. 467, 198 A.2d 518 (1964); *Rogan's Estate,* 404 Pa. 205, 171 A.2d 177 (1961).

a mistake of fact, he is entitled to restitution even though the other did not share in the mistake and did not know of or suspect its existence (see § 26)." Section 26, in turn provides that one who mistakenly makes a gift to another is entitled to restitution if the mistake "was as to the identity or relationship of the donee *or as to some other basic fact.* . . ." (Emphasis added).[11]

Finally, Professor Scott succinctly summarizes the general state of the law in his treatise on trusts:

"Where property is conveyed under a mistake in which both parties share, or where the grantor makes a mistake of which the grantee knows, the grantor can set aside the transaction even though value was given for the transfer. *Where the transfer was made under a mistake which the grantee did not share and of which he did not know, the transfer can be set aside if it was made by way of gift.* Such a unilateral mistake, however, is not a sufficient ground for rescission where the grantee gave consideration for the property." V A. Scott, Trusts § 465.1 (3rd ed. 1967). (Emphasis supplied).

I am satisfied that the granting of relief to rectify a unilateral basic mistake in the making of a gratuitous transfer of property is in accord with the weight of authority and properly recognizes the equities which inhere in such transactions. Clearly the expectations of a donee are less worthy of protection than are those of a transferee who gives value for the property transferred. *See* Dobbs, Remedies § 11.11 at 779 (1973). Between the mistaken donor and the innocent donee, the latter should bear the risk of mistake—at least until such time as the donee has changed position in reliance upon the transfer or circumstances have otherwise altered so as to make in-

---

11. Although Section 26 is by its terms applicable to gifts of money, the principles it states apply equally to transfers of land. *See* Restatement of Restitution § 39 (1937).

equitable the return of the property. *See* Restatement of Restitution §§ 648–69 (1937).[12]

In sum, appellant's evidence, which for the purposes of this appeal must be accepted as true, established that he never intended to transfer the property in question to his wife. It may be that the act of signing the deed was the result of naivete, stupidity or even negligence, but I cannot perceive of a mistake more basic in the making of a transfer or property than a misunderstanding of the very nature of the transaction. I would hold, therefore, that on this ground also appellant made a *prima facie* showing that the appellee took the property interest transferred to her as a constructive trustee.

12. In my view the integrity of transactions of record, such as conveyances by deed of real property, is adequately protected by the rule that a grantor who seeks to have a deed reformed or set aside must prove the facts which would entitle him to relief by evidence which is clear, precise, and convincing. See *Truver v. Kennedy*, 425 Pa. 294, 307, 229 A.2d 468 (1967); see generally *Masgai v. Masgai*, 460 Pa. 453, 333 A.2d 861, 865 (1975); *Sechler v. Sechler*, 403 Pa. 1, 7, 169 A.2d 78 (1961). This standard should be applied at the conclusion of trial in the instant case.