**In re JOSEPH B. DAHLKEMPER CO., INC., Debtor.**

**ESI ENTERPRISES, INC., Plaintiff,**

**v.**

**JOSEPH B. DAHLKEMPER CO., INC., Defendant.**

**Bankruptcy No. 93–10014–BM.
Adv. No. 93–1263–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 21, 1994.

Arthur D. Martinucci, Lawrence C. Bolla, Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., for defendant/Joseph B. Dahlkemper Co., Inc.

T. Lawrence Palmer, Houston Harbaugh, P.C., Pittsburgh, PA, for plaintiff/ESI Enterprises, Inc.

Norman E. Gilkey, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, PA, for Committee of Unsecured Creditors.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Two matters are before the court at this time. ESI Enterprises, Inc. ("ESI") has brought a complaint at Adversary No. 93–1263–BM to recover the sum of $188,788.53 which ESI asserts are the proceeds of merchandise owned by it that was sold at going-out-of-business sales ("sales") it conducted on debtor's behalf shortly before debtor filed for bankruptcy.

Debtor denies ESI's exclusive ownership of the proceeds of the sales and, alternatively, denies that ESI's interest in the proceeds

was secured. Additionally, debtor avers that if ESI has an entitlement to any sum it is substantially less than $188,788.53.

Judgment will be entered in the adversary action in favor of ESI and against debtor in the amount of $61,861.99.

ESI also has filed a proof of claim as a general unsecured creditor in which it seeks in excess of $400,000.00 in lost profits as a result of debtor's alleged breach of the agreement pertaining to the sale(s).

Debtor has objected to the proof of claim. Debtor denies that it breached the agreement and contends that ESI has failed to demonstrate that ESI lost profits as a result of any breach by debtor.

Debtor's objection will be sustained. ESI's proof of claim will be disallowed in its entirety.

–I–

### FACTS

Debtor is in the business of selling consumer goods to the general public at "discount prices" through retail outlets. Two of its outlets had been located at Monroeville, Pennsylvania, and Ross Township, Pennsylvania, respectively.

ESI was incorporated in November of 1992 for the purpose of conducting going-out-of-business sales for debtor at the above locations. Although ESI's principal had previously conducted a sale in Michigan, ESI itself had not engaged in business prior to November of 1992.

On October 30, 1992, debtor and ESI executed an agreement ("agreement") wherein ESI agreed to conduct sales for debtor at the above locations.

The agreement contained several conditions precedent. For instance, debtor agreed to provide "current" inventory costing at least one million four hundred thousand dollars ($1,400,000.00). Also, debtor, ESI, and debtor's secured creditors were to execute an inter-creditor agreement wherein the latter subordinated their secured interest to ESI's interest and **acknowledged ESI's**

ownership of goods ESI provided for the sales.

The agreement provided that ESI would be paid a commission of five percent (5%) on all sales as its compensation for organizing and conducting the sales.

Also, ESI agreed to provide additional jewelry costing at least three million dollars ($3,000,000.00) and so-called "hard goods" to supplement debtor's merchandise. Debtor acknowledged that such merchandise was "the sole property of ESI until sold" and that ESI was to have a security interest in the merchandise and its proceeds.

The agreement further provided for the establishment of a special checking account under the dual control of debtor and ESI into which receipts from sales of debtor's merchandise and of ESI's merchandise were to be deposited on a daily basis. The signature of a representative of debtor and the signature of a representative of ESI were required for any disbursements or withdrawals from the account.[1]

ESI was to be paid its commission on a daily basis. Except for hard goods ESI had provided, debtor and ESI were to be paid out of the special account the cost of the merchandise they owned which had been sold the previous day. ESI was to be paid for its jewelry merchandise at cost and for its hard goods at cost plus three percent (3%).

Finally, the agreement provided that ESI, "in consultation with Owner [i.e., debtor]", had "full authority to direct the conduct of the sale".

On November 9, 1992, debtor, ESI, and Bank of America Business Credit ("BABC") executed an inter-creditor agreement wherein BABC subordinated its security interest to ESI's interest in ESI's goods only and the proceeds thereof but retained its security inventory in "all other inventory" of debtor. In addition, BABC acknowledged that the goods ESI provided were, "until paid for", the property of ESI and that debtor had no interest therein.

On November 10, 1992, debtor and ESI executed an addendum to the agreement of October 30, 1992 wherein they agreed that the sales would commence on November 12, 1992.

Pursuant to the provisions of the agreement, a special account in debtor's name was opened at on November 12, 1992 at Dollar Bank. Checks, withdrawals, or transfers of the funds in the account required the signature of a designated representative of ESI and the signature of any of four (4) designated representatives of debtor. Receipts from sales of all merchandise, including ESI's merchandise, were deposited on a daily basis into the account. Payment was made the next day to the party whose merchandise had been sold the previous day.

The sales commenced, as anticipated, on November 12, 1992 and continued through December 24, 1992.

Debtor executed a document on November 25, 1992, wherein it granted ESI a security interest in all of debtor's present and after-acquired inventory, including ESI's inventory "to the extent that the Debtor is deemed to acquire any interest therein".

The sales did not go as well as debtor and ESI had hoped. Total receipts were far below what had been anticipated. Also, relations between debtor and ESI were strained.

During the sales, ESI supplied additional hard goods costing $346,910.36 and received disbursements for these goods from the special account in the amount of $345,382.09. It is undisputed that ESI is entitled to the sum of $1,528.27 from the special account for these goods.

ESI also supplied additional jewelry costing $1,928,788.10 for which it received disbursements in the amount of $733,906.76 during the sales. Debtor also subsequently returned some unsold jewelry to ESI. The value of returned jewelry and the balance in the special account due and owing to ESI for sales of its jewelry are in dispute.

1. The agreement of October 30, 1992 subsequently was amended on November 25, 1992. The amendments are neither relevant nor material to the outcome of this case and therefore need not be recounted.

On December 30, 1992, some six (6) days after the sales had ended, the total balance in the special account was $1,401,025.25.

On January 4, 1993, without ESI's prior knowledge or consent, debtor unilaterally amended the endorsements required for the special account. Checks, withdrawals, or transfers from the special account no longer required the signature of ESI's designated representative. Only the signature of either of two designated representatives of debtor was required.

On January 7, 1993, debtor unilaterally transferred all of the funds in the special account to another account at another bank and closed the special account. ESI had no prior knowledge of these actions, did not consent thereto, and had no control over the account into which the funds had been transferred.

On January 8, 1993, debtor filed a voluntary chapter 11 bankruptcy petition.

On January 27, 1993, ESI filed a proof of claim as a general unsecured creditor for profits allegedly lost as a result of various breaches by debtor of the agreement of October 30, 1992. Debtor subsequently objected to ESI's claim.

On June 12, 1993, ESI commenced the above adversary action at Adversary No. 93–1263–BM. ESI alleged that a portion of the funds in the special account was its exclusive property. Alternatively, ESI claims that it had a perfected security interest in those funds. It seeks a judgment in the amount of $188,783.53 plus interest from December 24, 1992.

A trial was held on January 21, 1994 on ESI's complaint and on debtor's objection to ESI's proof of claim. Both parties were given an opportunity to present evidence on disputed issues.

–II–

## ANALYSIS

### ADVERSARY NO. 93–1263–BM

A) *Status Of ESI's Interest In Proceeds Of Special Account*

Several issues must be resolved in connection with the above adversary action.

■ The first (and most important) issue concerns the status of ESI's interest in a portion of the funds in the special account which debtor unilaterally transferred to another account at another bank just one day prior to the filing of the bankruptcy petition.

ESI has advanced two theories in support of its entitlement to those funds. ESI asserts that the funds are proceeds of goods which were its exclusive property. Neither debtor nor its bankruptcy estate, ESI argues, had a property interest in those funds. Alternatively, ESI asserts that the funds in question are subject to its perfected security interest.

Curiously debtor does not respond vigorously to ESI's averment that it had exclusive ownership of the merchandise in question as well as the proceeds from its sale.

Debtor denies that ESI had a security interest in any of the funds in the special account when debtor withdrew and transferred them to an account at another bank. Neither the security agreement nor the UCC–1 financing statements, debtor argues, stated that ESI had a security interest in any **proceeds**. According to debtor, any security interest ESI may have in these funds is controlled by 13 Pa.C.S.A. § 9306(d)(4), which limits ESI's security interest to proceeds received by debtor within ten (10) days prior to the filing of the bankruptcy petition on January 8, 1993. Debtor argues that ESI did not have a security interest in any of the funds in the special account when they were withdrawn because no proceeds were deposited into the account during that ten-day period.

Debtor's contention is without merit. The agreement of October 30, 1992 and the subsequent conduct of debtor and ESI establish that jewelry ESI provided and the proceeds derived from its sale which subsequently were deposited into the special account were ESI's **exclusive** property.

The parties intended that debtor would have no legal or equitable property interest in either ESI's jewelry or the proceeds derived from its sale. Debtor expressly ac-

knowledged in paragraph 6(c) of the agreement that "... such merchandise is the sole property of ESI until sold ...". It follows *pari passu* from this acknowledgement that debtor also was not to have any property interest in the proceeds derived from its sale.

Mere placement of these proceeds into the special account along with proceeds realized from sales of debtor's goods did not thereby give debtor a property interest in ESI's assets. Debtor was not to have unilateral control over disbursements or withdrawals. Paragraph 7 of the agreement provided that the special account was under the joint control of both parties. The signature of a designated representative of debtor and the signature of a designated representative of ESI was required for any withdrawals or transfers. The obvious purpose of this arrangement was to ensure that proceeds derived from sales of one party's merchandise were not treated by the other party as its property. ESI retained joint control over disposition of all funds in the special account in order to protect its exclusive interest in its own proceeds.

The fact that the special account was subject to joint control does **not** imply that ESI and debtor had joint ownership of all the funds therein. ESI's and debtor's respective proceeds remained separate and distinct and were identifiable as such at all relevant times. No other funds were ever deposited into the special account. Paragraph 7 of the agreement provided that each party was to be paid on a daily basis for its merchandise which had been sold the previous day. It was not contemplated that unrelated disbursements would be made from said account. In fact, no unrelated disbursements occurred.

Until January 4, 1993, when debtor unilaterally amended the signature card for the special account by deleting ESI as a required signatory for withdrawals and transfers of funds in the account, debtor and ESI treated the proceeds derived from sales of ESI's goods as ESI's exclusive property. Disbursements totalling $733,906.75 and $345,382.09, respectively, had been made to ESI from the special account for sales of its jewelry and hard goods.

■ Debtor's unilateral action, taken one day prior to the filing of the bankruptcy petition, of transferring all of the funds in the special account to an account at another bank under debtor's exclusive control did not thereby deprive ESI of its right to recover the funds in the special account in which it had an exclusive property interest. To the contrary, debtor's action was tantamount to a "conversion" of property owned by ESI. We see no legal basis for debtor to have acquired title to ESI's portion of the funds in the special account when debtor transferred to its account at another bank. To the contrary, at best debtor is trustee of a constructive trust to the benefit of ESI.

■ Imposition of a constructive trust is a matter of state law. See *In re McKay*, 110 B.R. 764, 770 (Bankr.W.D.Pa.1990). It is a relation with respect to property which subjects the person in whom legal title to property resides to an equitable duty to convey it to another on the theory that his acquisition of the property was wrongful and that he would be unjustly enriched if permitted to retain it. *Yohe v. Yohe*, 466 Pa. 405, 411, 353 A.2d 417, 421 (1976).

■ Unlike an express or a resulting trust, a constructive trust does not require that the parties specifically intended to create a trust. *Stauffer v. Stauffer*, 465 Pa. 558, 567, 351 A.2d 236, 241 (1976). There is no bright line test for determining whether a constructive trust should be imposed. The key consideration is whether or not imposition or a construction trust would avoid unjust enrichment. *Id.*; also *Denny v. Cavalieri*, 297 Pa.Super. 129, 132, 443 A.2d 333, 335 (1982).

As previously stated, we see no basis for debtor to have acquired legal title to ESI's funds held in "debtor's bank account". However, if debtor did acquire legal title to ESI's portion of the funds in the special account when debtor transferred all of those funds to an account under its exclusive control at another bank, the circumstances of this case require imposition upon debtor of a constructive trust in favor of ESI to the extent of ESI's interest in the funds in the special account as of January 7, 1993.

Debtor's unilateral action in transferring all of the funds in the special account was in clear violation of the agreement of October 30, 1992 and therefore was wrongful and unjustified. Moreover, debtor (and its bankruptcy estate) would be unjustly enriched in the absence of a constructive trust. ESI complied with the provisions of the agreement and ought to receive the funds that are its due.

The bankruptcy estate also would be subject to any constructive trust imposed upon debtor because of debtor's prepetition conduct. A bankruptcy estate can have no greater interest in property than the debtor had when the bankruptcy petition was filed. See *In re Brown,* 734 F.2d 119, 124 (2d Cir.1984). Section 541(a)(1) of the Bankruptcy Code, which provides that the bankruptcy estate is comprised of all of debtor's legal and equitable interests in property as of the commencement of the case was not meant to enlarge debtor's rights against others beyond those rights existing at the commencement of the case. See *In re Garrott & Sons,* 772 F.2d 462, 467 (8th Cir.1985). Where a debtor's conduct has given rise to a constructive trust so that debtor holds only bare legal title to property but has a duty to convey it to the rightful owner, the bankruptcy estate generally is subject to the same duty. *Id.*[2]

**B)** ***The Value of ESI's Interest In The Proceeds Of The Special Account***

The second issue posed in Adversary No. 93–1263–BM concerns the dollar amount of ESI's interest in the funds in the special account as of January 7, 1993.

As has been indicated, it is undisputed that ESI is entitled to the sum of $1,528.27 for hard goods it had provided for the sales. What is in dispute is the amount in the special account to which ESI is entitled for sales of jewelry it provided.

ESI claims that it supplied jewelry costing $1,928,788.10; that it received disbursements from the special account amounting to $733,906.75 for sales of its jewelry; and that jewelry costing $1,007,621.09 was returned to it after the sale. According to ESI, the balance of the funds in the special account which it is entitled is $187,260.26. [$1,928,788.10 − ($733,906.75 + $1,007,621.09) = $187,260.36.]

Debtor disputes neither the cost of the jewelry ESI supplied nor the amount of the disbursement to ESI from the special account for sales of its jewelry. What debtor disputes is the cost of jewelry returned to ESI after the sales. Debtor claims that it returned jewelry costing $1,134,547.63, some $126,926.43 more than ESI claims. According to debtor, the balance of the funds in the special account to which ESI is entitled for sales of its jewelry is only $60,333.67. [$1,928,788.10 − ($733,906.75 + $1,134,547.68) = $60,333.67].

Determination of the amount to which ESI is entitled for its jewelry ultimately depends on the value of the jewelry returned to ESI after the sales had ended.

As plaintiff in the above adversary action, ESI undoubtedly has the burden of proving by a preponderance of the evidence that the value of returned jewelry is $1,007.621.09, rather than $1,113,547.68. ESI has failed to meet its burden.

In support of its calculation, ESI offered at trial a computer-generated list which allegedly states the values of specific items of returned jewelry. According to ESI, these values in turn were derived from documents which were contemporaneously created when debtor inventoried the returned jewelry upon its receipt. These latter documents, however, were not offered at trial. ESI asserts that it searched "high and low" but was unable to locate them because it recently had moved its place of business to a new location.

Without these documents, it cannot be said with the requisite degree of confidence that the value of the jewelry returned to ESI was $1,107.621.09 and not $1,134,547.68. Debtor has vigorously contested the accuracy of ESI's calculation and insists that ESI's statement of value is grossly inflated.

**2.** It is not necessary in light of the above resolution to consider ESI's alternative contention that it had a perfected security interest in the proceeds of the special account and debtor's counter-argument.

As has been indicated, debtor concedes that ESI's interest in the funds in the special account as of January 7, 1993 had a value of $60,333.67. Because this amount is not in dispute, it provides the most reliable basis upon which a judgment in a specific amount can be entered in favor of ESI. Accordingly, judgment in the above adversary action will be entered in favor of ESI and against debtor in the amount of $1,528.27 for hard goods and the sum of $60,333.67 for jewelry ESI provided.

## –III–

## OBJECTION TO ESI'S PROOF OF CLAIM

ESI also has filed a proof of claim as a general unsecured creditor averring it lost approximately $745,000.00 in profits as a result of debtor's alleged breach of the agreement of October 30, 1992.

ESI's claims include $225,000.00 in commissions lost as a result of the alleged breach. According to ESI, it had been projected that one hundred percent (100%) of the merchandise would be sold and that net sales would total $7,550,000.00. Paragraph 4 of the agreement provided that ESI would receive a five percent (5%) commission on all sales, in which case it should have earned commissions in the amount of $377,500.00. ESI asserts that it earned only $150,000.00 in commissions and seeks to recover the balance of $225,000.00.

In addition, ESI claims that it lost some $520,000.00 in profits on sales of its jewelry as a result of debtor's breach of the agreement. According to ESI, it had been projected that ESI would sell $3,000,000.00 of its own jewelry; that its profit margin on the sales would be twenty-five percent (25%); and that it would realize a profit of $750,000.00 on these sales. ESI asserts that it netted sales of only $921,267.00 on its jewelry, some $2,078,733.00 less than had been anticipated and seeks to recover additional lost profits of $519,683.25. ($2,073,733.00 × 25% = $519,683.25).

■ Debtor denies that it breached the agreement and asserts that ESI has failed to establish that it lost any profits as a result of debtor's misconduct.

Lost profits may be recovered for breach of contract only when:

(1) they are established with reasonable certainty;

(2) they are the proximate result of some wrong; and

(3) they were reasonably foreseeable.

See *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 119, 464 A.2d 1243, 1258 (1983).

Debtor's objection to ESI's proof of claim shall be sustained because ESI has failed to establish the alleged lost profits with reasonable certainty.

■ ESI's claim is based on certain "expectations" and "projections" concerning: the percentage of merchandise that would be sold (i.e., one hundred percent); the net revenues that would be realized from these sales (i.e., $7,550,000.00); the amount of its own jewelry that would be sold (i.e., $3,000,000.00); and the profit margin that ESI would realize from these latter sales (i.e., twenty-five percent). Although lost profits need not be established with mathematical certainty, they must be established with "a fair degree of probability". See *Exton Drive–In, Inc. v. Home Indemnity Co.*, 436 Pa. 480, 488, 261 A.2d 319, 324 (1969), *cert. denied*, 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970). ESI's "projections" and "expectations" are purely speculative and cannot be relied upon in this case.

■ Pennsylvania courts are "skeptical" of claims for lost profits by "new and untried" businesses. See *Advent Systems Ltd. v. Unisys Corp.*, 925 F.2d 670, 680 (3d Cir. 1991). ESI was such a "new and untried" business. It was created for the sole purpose of conducting the sales in question and had not conducted any sales prior to November of 1992.

■ The sole basis offered for ESI's "projections" and "expectations" was another sale conducted "somewhere in Michigan sometime in the recent past" by ESI's principal. Insufficient evidence was presented concerning this sale and its similarity to the

present sales for it to provide any reasonable basis for the above "projections" and "expectations".

Debtor's objection to ESI's proof of claim shall be sustained for the additional reason that ESI has failed to establish that the profits it allegedly lost were the proximate result of any wrong committed by debtor.

According to ESI, debtor breached the agreement of October 30, 1992 in the following respects.

It was a "condition precedent" to the agreement that debtor provide "current" inventory having a value of $1,400,000.00 for the sales. As has been noted, the sales were conducted in November and December of 1992. Some of the goods debtor provided were more appropriate for use only during the summer months—e.g., gas grills, lawn chairs, beach umbrellas.

■ ESI's contention that debtor breached the agreement by not providing "current" merchandise is without merit. Section 3G of the agreement defined "current" goods as goods that are "not obsolete, damaged, or defective". No proof was offered that the goods debtor provided were obsolete, damaged, or defective. The fact that certain of these goods may not have been seasonal does not establish that were not "current", as defined in the agreement.

Between $200,000.00 and $250,000.00 was spent on advertising the sales. ESI's contention that debtor thereby breached the agreement in that the sum of $300,000.00 was to be spent on advertising is without merit. Paragraph 5 of the agreement estimated that $300,000.00 would be spent on advertising but left open the possibility that the amount so spent might be greater or less than $300,-000.00

■ Finally, ESI contends that debtor breached the agreement by disallowing the percentage or the timing of the discounts ESI wanted. This contention, like the others, is without merit. Paragraph 11 of the agreement provided that ESI had "full authority" to direct the conduct of the sale "in consultation with Owner". The agreement did not give ESI the right to determine by fiat the percentage and timing of discounts or to unilaterally override debtor's position on such matters.

An order sustaining debtor's objection to ESI's proof of claim shall be entered.

### ORDER OF COURT

AND NOW at Pittsburgh this 21st day of March, 1994, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that judgment in the amount of $61,861.99 is entered at Adversary No. 93–1263–BM in favor of plaintiff ESI Enterprises, Inc. and against debtor/defendant Joseph B. Dahlkemper Co., Inc.

IT IS FURTHER **ORDERED** that the objection by debtor Joseph B. Dahlkemper Co., Inc. to the proof of claim filed by ESI Enterprises, Inc. is sustained. The proof of claim is **Disallowed In Its Entirety.**